1. Section 113-1526 of the Code, providing that no suit to recover a debt due by the decedent shall be commenced against the administrator until the expiration of 12 months from his qualification, does not apply in a trover action wherein recovery for hire and value of property involved is expressly waived, and recovery of the property itself is sought within 12 months. Adder Machine Co. v. Hawes, 152 Ga. 826
(111 S.E. 188); Atkinson v. Universal Credit Co., 51 Ga. App. 517
(180 S.E. 926).
2. In an action of trover the issue is one of title. Berry v. Jackson, 115 Ga. 196 (41 S.E. 698, 90 Am. St. 102). A bill of sale of personalty to secure the payment of debt is a conveyance passing the title until the payment of the debt, and trover may be based thereon. Watts v. Wight Investment Co., 25 Ga. App. 291 (103 S.E. 184).
3. When the plaintiff in a trover action, having elected to take a verdict for the property, waiving verdict for the value and hire thereof, offers evidence tending to prove its title, the conversion of the property by the defendant, its demand therefor and refusal to deliver before institution of suit, it has made out a prima facie case. Pryor v. Brady, 115 Ga. 848
(42 S.E. 223); White v. White, 71 Ga. 670 (2); Legere v. Blakely Gin Co., 11 Ga. App. 325
(75 S.E. 163).
4. When the plaintiff in a trover action fails to prove either conversion of the property or possession in one of the defendants, at the time the suit is brought, the case fails as to such defendant.
5. When a senior bill of sale of personal property to secure debt is recorded in the county of the maker's domicile where he does not reside at the time of the execution thereof, and, without actual notice to a subsequent vendee, a junior bill of sale of the same personalty to secure debt is recorded in the county of the maker's residence at the time of the execution thereof, title to said property vests in the junior vendee until the payment of the debt secured by his bill of sale.
 DECIDED JULY 3, 1947.
This is an action in bail trover for the recovery of certain personal property brought in the Superior Court of Wilkes County. The petition alleges: that the defendants, R. H. Pharr, as administrator of the estate of J. R. Caldwell, and R. E. Edwards of Wilkes County, Georgia, are in possession of said property describing the same; that its value is $1200; and that said defendants refuse to deliver said property. The defendants filed an answer in which it is admitted: that defendant Robert H. Pharr is administrator of the estate of J. R. Caldwell; and that he and the other defendant are residents of Wilkes County, Georgia; they deny that they are in possession of the property sued for; they deny *Page 365 
its value is $1200; and they have refused to deliver the same to the plaintiff. The answer also contains a special plea making the point that the suit had been brought within less than 12 months from the date of qualification of the defendant, R. H. Pharr as administrator of the estate of J. R. Caldwell. Before the case was called for trial the plaintiff amended its petition by electing to recover the property sued for and by waiving its right to recover the value of the property or its hire. On the trial of the case by stipulation the defendants admitted that formal demand for the property was made by the plaintiff of the defendants and refused.
The plaintiff introduced in evidence a bill of sale dated Oct. 15, 1945, signed by J. R. Caldwell, made to the Commercial Bank of Crawford, Ga., conveying title to one red mule, 12 years old, weight 1100 pounds, named Carrie and one black mare mule, 11 years old weight 1000 pounds, named Cora. The bill of sale conveys three mules and the petition has been stricken to the extent that the mule named Ida is no longer involved in the case, said mule being either dead or can not be located. Said bill of sale recorded on Nov. 15, 1945, in book A-30, page 250, Mortgage records of Oglethorpe County, Ga.; also bill of sale dated Oct. 29, 1945, made by J. R. Caldwell to the Commercial Bank of Crawford, Ga., conveying one 1941 Ford 1-1/2 ton truck, motor No. 268865, recorded Nov. 15th in book A-30, page 251, Mortgage records of Oglethorpe County, Ga.; also two notes corresponding to this bill of sale, counsel stating that he is not asking for the recovery of the value of the property, and rested.
The defendants introduced documentary evidence and testimony as follows: Application of R. H. Pharr to be appointed permanent administrator of the estate of J. R. Caldwell, who died in Wilkes County, Ga., December 11, 1945, alleging that he left an estate of real and personal property amounting to $900 same having been filed April 9, 1946 and the administrator having been appointed on May 6, 1946 and having qualified May 9, 1946, giving bond in the sum of $1800 with R. E. Edwards as security; bill of sale given to secure a debt by J. R. Caldwell to R. E. Edwards on the same Ford truck and two of the same mules, recorded in Mortgages, superior court, on Dec. 1, 1945, in book 101, pp. 417-8, together with note accompanying the same, which it is given to secure; also, with permission of attorneys for plaintiff, the record *Page 366 
of bill of sale from J. R. Caldwell to Washington Loan Banking Co., dated Aug. 18, 1945, and recorded Aug. 28, 1945, in Mortgage book 101, page 386, offered in lien of certified copy of original paper. It is not the property involved in this case.
Frank W. Thomas testified on direct examination as follows: "I am cashier of the Washington Loan Banking Company, and was such in all of 1945. During that time I remember taking two bills of sale from J. R. Caldwell, one in August, 1945, for $200. With reference to the statement in the bill of sale as follows, `I, J. R. Caldwell, of Wilkes County, Georgia, for and in consideration of $200,' etc., and as to where I got that information that he was in Wilkes County, at the time I knew he was living in front of Charlie Grenade's warehouse. I knew his wife. She was living there. They were living together. I couldn't swear that they had children but I was on front of Charlie's house one day and there were several in the yard with him. To the best of my knowledge I knew that he and his wife and family, if he had one, were living in that house in Washington, Ga.; he had been coming in the bank for several months prior to that time. When I took these bills of sale he did not tell me he was living somewhere else. He did not state to me that this was not his legal residence. He did not state to me that he had a domicile in any other county. He did not tell me that he was still living in Oglethorpe County." On cross-examination witness testified that: "With reference to whether he never told me in fact he was living in Wilkes County when that paper was fixed out it gave our county as where he lived. There was no doubt in my mind as to where he lived. I could not swear that I asked him where he lived. I couldn't say I asked the question or did not ask the question as to where he lived. When I saw him in front of Mr. May's warehouse, and his wife and children, I took it for granted he was living in Wilkes. I did not know he was serving on the jury in Oglethorpe County, nor voting there."
F. M. Wynn testified as follows: "I knew J. R. Caldwell. I lent him some money on an automobile in 1945, last year. I recorded that paper (indicating) in Wilkes County (bill of sale to secure debt from J. R. Caldwell to witness introduced). I recorded it in Wilkes Country because he lived here at the time. I knew he lived here at that time. He lived in the county. I knew he *Page 367 
had married but I would not have known his wife if I had met her in the road." On cross-examination the witness, F. M. Wynn, testified as follows: "I knew Mr. Caldwell came here from Oglethorpe. When he came here he first worked in the pulp-wood business and afterwards maybe teamed up with Mr. Pope some way, saw-milling or pulp-wood business. So far as I know he did not own a residence in the country. When I say he lived here I mean when I dealt with him he was in the Town of Washington, Wilkes County, Georgia. I didn't know that he served on the jury in Oglethorpe or anything about his voting there or anything about his making a declaration that that was still his home. I didn't know anything about him, no more than anybody else, but that he moved in here and lived a year or two."
H. A. Bridges testified that he and J. R. Caldwell were both employed by Pope Lumber Co. located at Washington in Wilkes County; that the witness for the Pope Lumber Co. sold Caldwell the truck involved in this litigation; that the bill of sale was recorded in Wilkes County. His testimony as to the residence of Caldwell was substantially the same as that of the witnesses Thomas and Wynn.
Edward Anthony testified that he had been in business with Caldwell, logging a sawmill. His testimony as to the residence was substantially the same as other witnesses for the defendants.
Mrs. J. R. Caldwell, widow of J. R. Caldwell deceased, testified in substance: that when her husband died Dec. 11, 1945, he was residing in Washington, Wilkes County, Georgia, on Liberty Street, where he had so resided for 2 years before his death; that prior thereto he had lived in Washington, Georgia, at the home of Mr. Sidney Hopkins on Main Street for 11 months; that she and their three children had resided with him all this time; that the family moved away from Oglethorpe County to Wilkes County; Mr. Caldwell sold their home in Oglethorpe County after the family moved away; that he had no other residence or domicile except in Washington, Georgia in 1945; that her husband continued to vote and serve on juries in Oglethorpe County after moving to Washington; that she wrote a letter to the cashier of plaintiff's bank dated Feb. 15, 1946 about its claim on the truck and mules because her brother-in-law, Alfred Caldwell had told her about this claim. *Page 368 
The plaintiff introduced documentary evidence and testimony as follows: Lease contract made by A. B. Maxwell by S. L. Maxwell to J. R. Caldwell dated November 20, 1945, the venue being given as Georgia. Oglethorpe County and stating in the caption that this indenture is made November 20, 1945 between A. B. Maxwell of Oglethorpe County, Georgia, party of the first part and J. R. Caldwell of said State and county of the second part. This lease was transferred to R. E. Edwards on the first of December, 1945, in Wilkes County, Georgia. The transfer of the lease does not state anything about the residence of the parties. This timber lease is recorded in book 3-J page 21 of the deed records of Oglethorpe County, Georgia; also deed made by John R. Caldwell, the deceased person to A. H. Caldwell on the 7th day of April 1945. The only part of the deed being material is the heading "Georgia-Oglethorpe County" and the statement in the caption that, this deed made this the 7th day of April 1945 between John R. Caldwell of Oglethorpe County said State, party of the first part and A. H. Caldwell of Oglethorpe County, said State, party of the second part. This deed and the timber lease are both signed "J. R. Caldwell" and are introduced as written declarations of residence; also letter dated Feb. 15, 1946, written by Mrs. J. R. Caldwell to Mr. Furcron, cashier of the bank as follows: "I received your letter today and I don't understand why you have not heard from me. I wrote you over two weeks ago and told you Mr. Edwards had taken the truck and mules. The mules were out at my father's and he went out there after them and told Daddy he was coming by here to see me and I have not seen him yet. I don't understand why he didn't bring the notes by to me after he got the truck and mules but he didn't. If you haven't heard from me before this I'm sorry for I certainly wrote you about this. I wish it was possible for me to pay you every penny John owed but since that is impossible I only hope you can get it out of the truck and mules if you get them."
George A. Barron, a witness for the plaintiff testified regarding the residence of J. R. Caldwell in substance: that he is a resident of Lexington and is the clerk of the Superior Court and also clerk of the City Court of Lexington; that he knew J. R. Caldwell during his life; and that Mr. Caldwell served on a jury in Oglethorpe County, Nov. 1945. A jury list and jury scrip were *Page 369 
introduced each showing the name "J. R. Caldwell." He further testified that Mr. Caldwell's name was on the list revised in 1944.
Ed Faust, witness for the plaintiff, testified: that he is a resident of Crawford, Oglethorpe County and is superintendent of county schools; that he knew J. R. Caldwell who was killed in Wilkes County 1945; and that they were reared on adjacent farms in Oglethorpe County. The witness saw Mr. Caldwell serving on a jury in Lexington, Oglethorpe County 1945, less than 30 days before he was killed. The witness further testified: "I was eating lunch about 12:30 and was sitting at the counter in the cafe and as I finished and started out someone called me. Mr. Caldwell and some other gentleman were sitting in a booth in the cafe. I hadn't seen him in some time and went over and pulled up a chair and sat down. They had placed an order but were not eating at the time and he said he was cutting some timber and still cutting timber, I believe, in Washington, and I asked him what he was doing over in Lexington. He said he was serving on the jury. I remarked that I thought he had moved. He said he had not moved, he was cutting some timber here (Wilkes County) and was coming back home when he finished that work. I have heard Mr. Caldwell say that he voted in Oglethorpe County after 1943. He told me he voted there in April of 1944. I was up for re-election at that time." On cross-examination the witness testified as follows: "I thought he had moved away. I knew he had been living down here (Wilkes County), I didn't know where he was living then; it had been some time since I had seen him. I knew he had a family. I didn't know that his family were living with him here — I assumed that they were. None of his children were going to school in my school. He told me he was down here sawing timber and he expected to move back to Oglethorpe County. He did not say when but did say when he finished. He did not say whether that would be one year or ten years. I did not know he had sold his home up there or that he did not have a home in Oglethorpe County. I asked him why he was serving on a jury in Oglethorpe County and that was what he told me."
Jim Reynolds, witness for the plaintiff, testified that he was tax collector of Oglethorpe County and that the voters' books were purged in 1944 and John R. Caldwell who was killed *Page 370 
in Wilkes County on December 1945 and whom he knew personally appears on the voters' list of Oglethorpe County, 1944.
Carl Broach, a witness for the plaintiff, testified as follows: "I live in Oglethorpe County. I knew Mr. John R. Caldwell who was killed in Wilkes County in 1945. I had known him practically all his life. We were very good friends. In August of 1945 when the jury was drawn for the city court I had a conversation with him about his residence. I told the judge that he had moved away. Mr. Barron said he still claims this as his home. So he was summonsed, and between that time I told him, I said, 'Johnny, I thought we had lost you.' He said, `No, I claim that for my home.' Mr. Caldwell told me that. That conversation arose from the fact he was summonsed as a juror and did serve. I am sheriff of Oglethorpe County." On cross-examination the same witness testified that Caldwell told him, "I am working down there (Wilkes County) but I claim this as my home," that he knew that he had moved away is why he asked him. He further testified that Caldwell did not live anywhere in Oglethorpe County that he knew of in 1945.
On rebuttal, R. E. Edwards, one of the defendants, with reference to residence of Caldwell testified substantially to the same effect as did other witness for defendants on this subject and in addition he further testified: that he had his paper (bill of sale to secure a debt) recorded in Wilkes County because Caldwell lived here; that he did not know of Mr. Caldwell having or claiming to have any other home. On cross-examination he testified: that he went and got mules without notifying the bank or Mrs. Caldwell or anybody; that he did not know about the bank; that he knew Mr. Caldwell was dead; that he talked with a lawyer and Mrs. Caldwell's father; that she knew he was supposed to get them. On the trial of the case the jury returned a verdict in favor of the defendants and the judgment of the court was accordingly entered.
The plaintiff filed a motion for a new trial on general grounds which was later amended by adding three special grounds. The court overruled the motion for new trial and to this judgment plaintiff excepted and assigns the same as error. The first special assignment of error as disclosed by the amended motion for new trial is based upon the failure of the court to give in charge a timely written request as follows: "I charge you, gentlemen of the jury *Page 371 
there are two defendants in this case, R. H. Pharr, administrator of J. R. Caldwell, deceased, and R. E. Edwards. I charge you record of a bill of sale, or of an instrument conveying title, is not necessary as between the parties to that instrument, and that the bill of sale would be valid against J. R. Caldwell, if living and his legal representative representing the estate of J. R. Caldwell, without being recorded. I charge you that it would be your duty in any event to find a verdict for the plaintiff as against R. H. Pharr, administrator of J. R. Caldwell, deceased."
Also because the charge of the court was erroneous and harmful, in that it was confusing, the court having charged the jury as follows: "I charge you that the record of the bill of sale or an instrument conveying title is not necessary as between the parties to that instrument, and that the bill of sale would be valid as against J. R. Caldwell, if living and his legal representative representing the estate of J. R. Caldwell, without being recorded." The foregoing quoted portion of the charge being the first part of the request to charge, the court refused to give the last part, and in effect directed a verdict for the plaintiff as against R. H. Pharr, administrator of J. R. Caldwell, deceased.
The second special assignment of error as disclosed by the amended motion for new trial is an amplification of the general grounds, and contends that the evidence demanded a verdict in favor of the plaintiff as against R. H. Pharr, as administrator of J. R. Caldwell, deceased.
The third special assignment as disclosed by the amended motion for new trial contends that the timber lease in evidence dated November 20, 1945 executed by A. B. Maxwell to J. R. Caldwell, conveying timber in Oglethorpe County and reciting that it was executed between A. B. Maxwell, Oglethorpe County, Georgia, party of the first part and J. R. Caldwell of said State and county, of the second part, showing on its reverse side that it was transferred in Wilkes County, Georgia, on December 1, 1945, by J. R. Caldwell to R. E. Edwards, the same date on which bill of sale relied on by defendants was executed, put defendant R. E. Edwards on notice of the actual county claimed by J. R. Caldwell as a domicile.
1. Section 113-1526 of the Code providing that no suit to recover a debt due by the decedent shall be commenced against the administrator until the expiration of 12 months from his qualification does not apply in a trover action wherein recovery for hire and value of the property involved is expressly waived, and recovery of the property itself is sought within 12 months. Adder Machine Co.
v. Hawes, 152 Ga. 826 (supra); Atkinson v. UniversalCredit Co., 51 Ga. App. 517 (supra).
The plea of the defendants invoking this statute seems to have been abandoned by them upon the allowance of the plaintiff's amendment waiving recovery for hire and value and electing a verdict for the property itself.
2. In an action of trover the issue is one of title. Berry
v. Jackson, 115 Ga. 196 (supra). A bill of sale of personalty to secure the payment of a debt is a conveyance passing the title until the payment of the debt, and trover may be based thereon.Watts v. Wight Investment Co., 25 Ga. App. 291 (supra).
3. When the plaintiff in a trover action, having elected to take a verdict for the property, waiving verdict for the value and hire thereof, offers evidence tending to prove its title, the conversion of the property by the defendant, its demand therefor and refusal to deliver before institution of suit, makes out a prima facie case. Pryor v. Brady, 115 Ga. 850 (supra);White v. White, 71 Ga. 670(2) (supra); Legere v. BlakelyGin Co., 11 Ga. App. 327 (supra).
In the instant case in order to show title, the plaintiff introduced its bills of sale to secure debt, duly recorded in the office of the clerk of the Superior Court of Oglethorpe County, purporting to convey to it the property that is the subject-matter of the suit. Demand and refusal were stipulated. On the subject of conversion, it is an essential element in a trover action; and there is ample evidence in the record to have established the same as to the defendant, R. E. Edwards, but there is no evidence in the record to support a verdict finding that the defendant, R. H. Pharr, converted the property. Counsel for the plaintiff in error in their brief cite many authorities to the effect that proof of conversion as to this defendant is not an essential requisite to the plaintiff's case. Their position seems to be based on theories as follows: *Page 373 
(a) The provision of the Code, § 107-101 to the effect that it shall not be necessary to prove any conversion of property when defendant is in possession when the action is brought. (b) The giving of statutory bond for the forthcoming of the property as provided by the Code, § 107-202, amounts to a conclusive admission of possession.
The record disclosed that R. E. Edwards took possession of the property about February 15, 1946. R. H. Pharr qualified as administrator of the estate of J. R. Caldwell on May 9, 1946. The suit was filed May 10, 1946. There is no evidence in the record which would authorize a jury to find that the defendant, R. H. Pharr, ever had possession of the property either as administrator or otherwise at the time the action was brought or at any other time. We have carefully examined the authorities cited in the brief for plaintiff in error. They all either provide that conversion must be proved or possession in the defendant shown when action is brought. Nor can we agree that stipulation of demand and refusal obviates the necessity for proving conversion. Seago v. Pomeroy, 46 Ga. 227. Proof of demand and refusal is only required as evidence of conversion and where conversion is shown by other evidence such proof is not essential. In the instant case demand and refusal is stipulated. This is the equivalent of proof but only amounts to a circumstance tending to show conversion. As to the defendant, R. H. Pharr, the positive evidence negatives conversion. It is incumbent upon the plaintiff in a trover action to either prove conversion of the property or show it in possession of the defendant when action is brought. Gatlin v. Mathews, 16 Ga. App. 645(3) (85 S.E. 953).
Next we will consider whether the giving of a statutory bond amounts to a conclusive admission of conversion or possession as required to maintain a trover action. In Farmers AllianceWarehouse c. Co. v. McElhannon, 98 Ga. 394 (25 S.E. 558), cited in the brief of the plaintiff in error, it is held: "By giving bond for the forthcoming of the money, the defendant admitted that he had in his possession money answering to the description." In Bell v. Ober, 111 Ga. 668 (36 S.E. 904), cited in the briefs of counsel for both sides, it is held: "The execution of a recognizance payable to the plaintiff for the forthcoming of personal property, where bail has been required in an action of trover, does not estop *Page 374 
the defendant from denying that he ever was in possession of the property to recover which the suit was instituted."
The petition in the instant case charged possession of the property in both the defendants. The answer of the defendants denied it making such possession an issue of fact. Construing the two foregoing Supreme Court decisions together we conclude that while the giving of such bond amounts to an admission that the defendant has in his possession property answering to the description, he is not estopped to deny such possession and when so denied proof thereof is required. As heretofore pointed out all the evidence in the record touching on the question of possession of the property shows it never to have been in the possession of R. H. Pharr.
4. The evidence demanded a verdict in favor of the defendant, R. H. Pharr, and therefore the general grounds of the motion for new trial are without merit as to him. Considering the first assignment of error as disclosed by the amended motion for new trial and since the evidence demanded finding in favor of the defendant, R. H. Pharr, the failure of the court to charge the jury in the language requested is obviously not error nor was that part of the charge given by the court in any way hurtful to the plaintiff in error. The remaining assignments of error with reference to the defendant, R. H. Pharr, are likewise without merit.
5. This brings us to the crux of this case. The plaintiff in error claims title to the property by reason of two bills of sale to secure debt purporting to convey to it the property which is the subject-matter of this litigation. The first of these bills of sale purporting to convey title to plaintiff in error to the mules is dated Oct. 15, 1945. The second of said bills of sale purporting to convey to the plaintiff in error title to the truck is dated Oct. 29, 1945. Both are duly recorded in the office of the clerk of the Superior Court of Oglethorpe County. The defendant in error, R. E. Edwards claims title to the property by virtue of bill of sale purporting to convey title to said property to him, dated December 1, 1945, and duly recorded in the office of the clerk of the Superior Court of Wilkes County.
Section 67-1305 of the Code provides as follows: "Every deed to secure debt shall be recorded in the county where the land conveyed lies; every bill of sale to secure debt, in the county where *Page 375 
the maker resided at the time of its execution, if a resident of this State; and if a non-resident, then in the county where the personalty conveyed is. Deeds or bills of sale not recorded remain valid against the persons executing them. The effect of failure to record such deeds and bills of sale shall be the same as is the effect of failure to record a deed of bargain and sale."
It will be noted that the last sentence of this section states that the effect of failure to record such deeds and bills of sale shall be the same as shall be the effect of failure to record a deed of bargain and sale. The effect of this latter failure is provided in the Code, § 29-401, as follows: "Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies. The record may be made at any time, but such deed loses its priority over a subsequent recorded deed from the same vendor, taken without notice of the existence of the first."
In the instant case Mr. Caldwell was at the time of the execution of all the bills of sale to secure debt relied upon by both plaintiff and defendant, a resident of the State of Georgia. He was a resident of either Oglethorpe County or Wilkes County. If a resident of Oglethorpe County the record of defendant Edwards' bill of sale in Wilkes County was in an improper office. If a resident of Wilkes County, the record of plaintiff's bill of sale to secure debt in Oglethorpe County was in an improper office.
Section 67-111 of the Code provides in part as follows: "A mortgage recorded in an improper office . . shall not be held notice to subsequent bona fide purchasers or holders of younger liens." Construing § 67-111, just quoted in part, with § 67-1305, the recording of the bills of sale in a court other than in the residence of the maker at the time of its execution is equivalent to no record. It will remain valid against persons executing it, but will be postponed to all liens, created or obtained or purchased, made prior to legal record thereof. First NationalBank v. State Mutual Life Ins. Co., 163 Ga. 721
(137 S.E. 53, 51 A.L.R. 1524). It therefore follows that as between the plaintiff in error and the defendant in error, R. E. Edwards, this case turns upon whether J. R. Caldwell was a resident of Oglethorpe County on the dates he executed the bills of sale to secure debt relied upon by the plaintiff in error and duly recorded in that county or whether he was a resident *Page 376 
of Wilkes County on the date he executed the bills of sale to secure debt to Edwards, relied upon by him and duly recorded in Wilkes County.
Section 67-1305 of the Code, providing for the registration of bills of sale to secure debt, employs the word resided in connection with that part of the section providing that said bill of sale shall be recorded in the county where the maker resides at the time of its execution. In Avery v. Bower, 170 Ga. 202,204 (152 S.E. 239), the following is held: "`Residence' and `domicile' are not synonymous and convertible terms. A man may have many residences and only one place of domicile. There must be a concurrence of actual residence and the intention to remain to acquire a domicile. Worsham v. Ligon, 144 Ga. 711
(87 S.E. 1025)."
"A residence is different from a domicile, although it is a matter of great importance in determining the place of domicile. The essential distinction between residence and domicile is that the first involves the intent to leave when the purpose for which one has taken up his abode ceases. The other has no such intent; the abiding is animo manendi. One may seek a place for the purposes of pleasure, of business, or of health. If his intent be to remain, it becomes his domicile; if his intent be to leave as soon as his purpose is accomplished, it is his residence." 3 Bouvier's Law Dictionary, p. 2920.
The facts in this case are set forth in such detail as to afford ample opportunity to thoroughly examine them. Such an examination will disclose that the evidence offered by the plaintiff in error, nothing else appearing, would establish thedomicile of the maker of the bills of sale as being in Oglethorpe County. On the other hand the evidence offered by the defendant in error, nothing else appearing, would establish with equal force the residence of such maker on the same dates as being in Wilkes County. A further examination of the statement of facts will disclose that the evidence introduced by the opposing parties in this case on this subject is without conflict, each presenting a separate and distinct set of circumstances, the one not inconsistent with the other and each entirely consistent with the two respective opposing conclusions sought to be established. *Page 377 
Although the rule is well settled in this State that domicile or residence is one of fact for the jury in cases where the evidence is in conflict (Mayo v. Iran Allen-Marshall Co.,51 Ga. App. 250, 180 S.E. 20), on the other hand, where the evidence is not in conflict, we are of the opinion that this is a question of law for this court. In Forlaw v. Augusta NavalStores Co., 124 Ga. 261 (52 S.E. 898), the following is held: "`The existence or non-existence of a domicile in a given locality, where the facts are conflicting, is a mixed question of law and fact. So far as it involves questions of fact, including the ascertainment of the intention of the party, it is solely within the province of the jury, whose determination is conclusive, unless the verdict is set aside as having been against the evidence. . . And generally speaking, the question of what should be considered the domicile of a party is in all cases rather a question of fact than of law.' From 9 Cyc. 865." However, even if a question of fact for the jury, the evidence is ample for the jury to have found the domicile of the maker of the bills of sale to be in Oglethorpe County and his residence
in Wilkes County on the dates of the execution of said instruments. "The lien laws are in derogation of the common law and are to be strictly construed. One who claims a lien must bring himself clearly within the law." Vandalsem v. Caldwell,33 Ga. App. 88 (125 S.E. 716). The statute (Code, § 67-1305) providing for such recording, in the county where the makerresided at the time of the execution of such instruments, and the law drawing a clear distinction between residence anddomicile we are of the opinion that on the dates of the execution of the bills of sale the residence of J. R. Caldwell was in Wilkes County, and that the recording of the bill of sale of R. E. Edwards therein gave him superior title.
The court did not err in overruling the motion for new trial upon any of the grounds assigned.
Judgment affirmed. MacIntyre, P. J., and Gardner, J.,concur.