38785.    NATIONAL LINEN SERVICE CORPORATION
v. THOMPSON, Tax Commissioner.

DECIDED MAY 19, 1961—REHEARING DENIED JUNE 2, 1961.

*Haas, Holland & Zinkow, William M. Sinrich,* for plaintiff in error.

*Eugene Cook, Attorney-General, Ben F. Johnson, Robert W. Goodman, Deputy Assistant Attorneys-General, Harold Sheats,* contra.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, George B. Haley, Jr.,* amicus curiae.

CARLISLE, Judge. ■ The plaintiff in error assigns error on the judgment dismissing its affidavit of illegality on the grounds that the court erred in holding "that the assessment and collection of such tax does not violate the Constitution of the State of Georgia and the Constitution of the United States." In the affidavit of illegality it was contended that the cash and accounts receivable located at the defendant in fi. fa.'s branches outside the State of Georgia had acquired a business or commercial situs outside the State, and that the proposed taxation of such assets would violate the Fourteenth Amendment of the Constitution of the United States and Art. 1, Sec. 1, Par. 3 of the Constitution of the State of Georgia.

While, of course, under the ruling of the Supreme Court made in transferring this case from that court to the Court of Appeals (*National Linen Service Corp. v. Thompson,* 216 Ga. 550, 118 S. E. 2d 486), the affidavit of illegality and the assignment of error on the judgment overruling the same were insufficient to raise any question as to the constitutionality of the provisions of the act under which the assessment was made, such pleading was, nevertheless, sufficient to raise an issue as to whether the levy and assessment of the tax in question violated the defendant's constitutional rights as pleaded. This latter question is one within this court's jurisdiction.

To sustain its contention the defendant invoked, as to these particular intangibles, the so-called "single taxable situs rule." This rule, however, has no application to intangible property, but is limited in its application to tangible property. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 205 (26 S. Ct. 36, 50 L. Ed. 150) ; Cream of Wheat Co. v. County of Grand Forks, 253 U. S. 325, 329 (40 S. Ct. 558, 64 L. Ed. 931) ; Curry v. McCanless, 307 U. S. 357, 368 (59 S. Ct. 900, 83 L. Ed. 1339). Consonant with the foregoing rule it has long been recognized that the fact that intangibles may be taxed in one jurisdiction or may be subject to tax in such jurisdiction does not necessarily exclude liability of the holder of such intangibles to a direct tax, or a tax measured directly or indirectly upon the amount of such

intangibles levied by the jurisdiction where the owner of such intangibles may be domiciled. As was said by Mr. Justice Holmes in Fidelity & Columbia Trust Co. v. City of Louisville, 245 U. S. 54, 58 (38 S. Ct. 40, 62 L. Ed. 145) (paraphrased): Such a tax is a tax upon the holder, or owner, of the intangibles, and is imposed for the general advantages of living or being domiciled within the jurisdiction imposing the tax. These advantages may be measured more or less by reference to the wealth of the person or corporation taxed. Cream of Wheat Co. v. County of Grand Forks, 253 U. S. 325, supra. In Curry v. McCandless, 307 U. S. 357, supra, pp. 367, 368, the Supreme Court of the United States speaking through Mr. Justice Stone, summed up the reasons behind the rule in plain and understandable language as follows: "In cases where the owner of intangibles confines his activity to the place of his domicile it has been found convenient to substitute a rule for a reason, cf. New York ex rel. Cohn v. Graves, 300 U.S. 308, 313; First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 241, by saying that his intangibles are taxed at their situs and not elsewhere, or, perhaps less artificially, by invoking the maxim *mobilia sequuntur personam,* Blodgett v. Silberman [277 U. S. 1], supra; Baldwin v. Missouri [281 U. S. 586], supra, which means only that it is the identity or association of intangibles with the person of their owner at his domicile which gives jurisdiction to tax. But when the taxpayer extends his activities with respect to his intangibles, so as to avail himself of the protection and benefit of the laws of another state, in such a way as to bring his person or property within the reach of the tax gatherer there, the reason for a single place of taxation no longer obtains, and the rule is not even a workable substitute for the reasons which may exist in any particular case to support the constitutional power of each state concerned to tax. Whether we regard the right of a state to tax as founded on power over the object taxed, as declared by Chief Justice Marshall in McCulloch v. Maryland [4 Wheat. 316], supra, through dominion over tangibles or over persons whose relationships are the source of intangible rights; or on the benefit and protection conferred by the taxing sovereignty, or both, it is undeniable that the state of domicile is not deprived, by the taxpayer's activities elsewhere, of its constitutional jurisdiction to

tax, and consequently that there are many circumstances in which more than one state may have jurisdiction to impose a tax and measure it by some or all of the taxpayer's intangibles. Shares of corporate stock may be taxed at the domicile of the shareholder and also at that of the corporation which the taxing state has created and controls; and income may be taxed both by the state where it is earned and by the state of the recipient's domicile. Protection, benefit, and power over the subject matter are not confined to either state. The taxpayer who is domiciled in one state but carries on business in another is subject to a tax there measured by the value of the intangibles used in his business. New Orleans v. Stempel, 175 U. S. 309; Bristol v. Washington County, 177 U. S. 133; State Board of Assessors v. Comptoir National, 191 U. S. 388; Metropolitan Life Ins. Co. v. New Orleans, 205 U. S. 395; Liverpool & L. & G. Ins. Co. v. Board, 221 U. S. 346; Wheeling Steel Corp. v. Fox, 298 U. S. 193; cf. Blodgett v. Silberman, supra; Baldwin v. Missouri, supra. But taxation of a corporation by a state where it does business, measured by the value of the intangibles used in its business there, does not preclude the state of incorporation from imposing a tax measured by all its intangibles. Cream of Wheat Co. v. Grand Forks, supra, 329; see Fidelity & Columbia Trust Co. v. Louisville, 245 U. S. 54." For some of the cases reaching a similar result, see Graves v. Elliott, 307 U. S. 383 (59 S. Ct. 913, 83 L. Ed. 1356); Newark Fire Ins. Co. v. State Board of Tax Appeals, 307 U. S. 313 (59 S. Ct. 918, 83 L. Ed. 1312); Greenough v. Tax Assessors of Newport, 331 U. S. 486 (3) (67 S. Ct. 1400, 91 L. Ed. 1621). As was said in the latter case, the benefits bestowed upon the taxpayer by the domiciliary State justified the imposition of the tax. The assessment and levy of the tax in this case did not violate any of the defendant's constitutional rights.

■ Does the law of this State in fact impose a tax on the intangibles here in question? Under the provisions of Section 2 of the act approved March 18, 1941, a property tax was levied for the year 1942 and annually thereafter at the rate of $1 upon each $1,000 of the fair market value of all stocks in foreign corporations and all stocks in foreign domesticated corporations as of the first day of January without any de-

duction of any indebtedness or liability of the taxpayer. This act contained the provision, however, that the stock of a domesticated foreign corporation would not be subject to the tax therein levied if such domesticated foreign corporation shall pay to the State of Georgia or to its political subdivisions, as now provided by law, among other things, a tax on all their intangible property, irrespective of the physical location of the same. *Code Ann.* § 92-117.2. It will readily be observed, of course, that this section does not in and of itself impose any tax on the intangible property of a domesticated foreign corporation. The meaning of the words, "A tax on all their intangible property irrespective of the physical location of the same" can only be ascertained by reference to other provisions of the law. Basically then, the only other question in this case is, plainly and simply, when the taxpayer elected to pay taxes under the alternative provisions of this law, upon what intangibles was the tax due?

Both parties concede that the position of the defendant, a foreign domesticated corporation, is no better and no worse than the position of a domestic corporation. In other words, the defendant having elected to be taxed on all of its intangible property, it is subject to no greater taxability than would be a Georgia corporation. The solution to the basic question then must necessarily turn upon a determination of whether a Georgia corporation would be subject to a tax on the intangibles in question under the same circumstances.

The general policy of this State with respect to the taxation of property is that all property, whether real or personal, tangible or intangible, shall be taxed unless its exemption be constitutionally authorized. This policy is clearly enunciated by the wording of the last sentence of Art. 7, Sec. 1, Par. 4 of the Constitution, which reads: "All laws exempting property from taxation, other than the property herein enumerated shall be void." *Code* § 2-5404. While it is true that under the provisions of Art. 7, Sec. 1, Par. 3, the General Assembly has the power to classify intangible property and to adopt different rates and different methods of taxation for different classes of property, the authority to do this is not authority to exempt.

Unless the exemption claimed by the defendant in this case be expressly provided for or necessarily implied under the Constitutional provisions of Art. 7, Sec. 1, Par. 4, supra, any attempt to grant such an exemption would be unconstitutional. Of course, under the ruling of the Supreme Court in transferring this case to this court (*National Linen Service Corp. v. Thompson*, 216 Ga. 550, supra), we do not have any question as to the constitutionality of any law presented, and this is a question which this court does not have jurisdiction to decide, as pointed out in the preceding division of this opinion. This court does have authority to decide, however, whether the law under consideration has or has not granted an exemption to the intangible property of the defendant as claimed.

Complying with the constitutional mandate first mentioned, the legislature has from time to time enacted tax laws imposing taxes on property which have been codified under Chapter 92-1 of the Code. That all of the laws codified under Chapter 92-1 are laws imposing taxes on property is hardly open to question at this time. The purpose to tax all property, whether real or personal, and whether owned by individuals or corporations and whether owned by residents or nonresidents, unless legally exempted, was clearly stated by the General Assembly as far back as 1851. Ga. L. 1851-52, pp. 288, 289. This law which was codified by the framers of the 1933 Code as § 92-101 reads: "All real and personal property, whether owned by individuals or corporations, resident or nonresident, shall be liable to taxation, except as otherwise provided by law. (Acts 1851-2, pp. 288, 289)." This codification had the effect of reasserting in 1933 the legislative policy stated in 1851 with respect to the taxation of property. *Code* § 102-101.

Pursuant to this policy the General Assembly enacted the acts approved December 27, 1937, and December 22, 1953, imposing taxes on intangible property. Ga. L. 1937-38, Ex. Sess., pp. 156 et seq., and Ga. L. 1953, pp. 379, et seq.

Insofar as is material to the question in this case, Sections 3(e) and 3 (f) of the 1937 act need to be first noticed. These sections are as follows:

"(e) Every resident or nonresident person, including part-

nerships whose members are in whole or in part nonresidents of this State, is hereby declared to be subject to the tax imposed in this Act on so much of his property taxable under this section as shall have been acquired in the conduct of, or used incident to, business carried on or property located in this State. Each such person shall report such property and pay taxes thereon as provided by law, for citizens of this State.

"(f) Intangible property including money owned by a person domiciled in Georgia which has acquired a taxable situs and is subjected to tax in another State incident to the conduct of business located in the said other State shall not be deemed to be taxable under the provisions of this section." (Ga. L. 1937-38, Ex. Sess., p. 160; *Code Ann.* §§ 92-121 and 92-122).

"The tax imposed in this Act," as referred to in Section 3(e), material to the question now before the court, is that imposed by Section 3(a) of the same act (*Code Ann.* § 92-116), and that imposed under the provisions of Section 1(d) of the 1953 act (Ga. L. 1953, Nov.-Dec. Sess., p. 381; *Code Ann.* § 92-161 (d). These sections read:

"3(a) A property tax is hereby levied for the year 1938 and annually thereafter at the rate of ten cents ($0.10) on each one thousand dollars ($1,000) of the fair market value of all money as of the first day of January, without deduction of any indebtedness or liability of the taxpayer.

"1(d) A property tax is also hereby levied for the years 1954 and 1955 at the rate of $3.00 of each $1,000.00 of the fair market value of all accounts receivable and notes not representing credits secured by real estate; for the year 1956 at the rate of $1.00 of each $1,000.00 of the fair market value of all accounts receivable and notes not representing credits secured by real estate; for the year 1957 and anually thereafter at the rate of 10¢ of each $1,000.00 of the fair market value of all accounts receivable and notes not representing credits secured by real estate."

The words "all money" and "all accounts receivable" can only have one meaning and that is "all money" and "all accounts receivable" *held or owned by the taxpayer as of the date of the imposition of the tax, unless excluded or exempted by the terms of the act.*

Counsel for the defendant contend that Section 3(e) of the 1937 act shows a clear intention to limit the application of the tax imposed therein to such intangibles as "have been acquired in the conduct of, or used incident to, business carried on or property located in this State." However, a careful reading of this subsection in connection with the next succeeding subsection, both of which we have quoted above, shows that the legislature had no such intent. Section 3(e) is applicable to resident and nonresident persons only, as distinguished from persons domiciled in Georgia. Section 3(f) on the contrary is applicable to persons domiciled in Georgia, that is, having a permanent place of abode here with an intent to remain. Residence and domicile are not synonomous terms. *Commercial Bank v. Pharr,* 75 Ga. App. 364, 376 (43 S. E. 2d 439). See 13 Words & Phrases, Perm. Ed. 277, et seq. The legislature must be presumed to have had clearly in mind the difference in meaning of these terms in enacting these two sections. It is clear, with respect to Section 3(e), that the intent of the legislature was to tax the property of resident and nonresident persons, that is, persons not domiciled in Georgia only to the extent that it had been acquired in the conduct of or used incident to business carried on or property located in this State. The defendant in this case is not merely a resident of Georgia, but it is a corporation domesticated in Georgia with its principal office in Georgia. As such it can only be considered as a domiciliary of Georgia. When so considered, Section 3(e) has no application to its case. That section is, so to speak, the other face of the coin to Section 3(f) which is applicable to this case.

In imposing a tax on all of the intangibles here involved, the legislature did not choose to exempt intangible property owned or held by the taxpayer outside the State, except as provided in Section 3(f), and such an exemption must be strictly construed in favor of the State. *State Revenue Comm. v. Brandon,* 184 Ga. 225, 228 (190 S. E. 660); *Cherokee Brick &c. Co. v. Redwine,* 209 Ga. 691 (1) (75 S. E. 2d 550); *Church of God &c., Inc. v. Dalton,* 213 Ga. 76, 78 (97 S. E. 2d 132).

Giving to that section this strict construction required, it will

not be construed to grant relief to the taxpayer beyond the mere avoidance of imposing a second tax on *property* which has already been taxed in another State. But the allegations of the affidavit of illegality in this case show that the intangibles on which the defendant seeks to avoid the tax were merely used in Alabama and Texas as a part of the measure of a franchise tax imposed on the defendant for the privilege of doing business there by those States. The payment of such a tax does not relieve the defendant of its obligation to pay a tax on those intangibles in Georgia.

An intangible tax is an ad valorem tax on intangible property and is a property tax; a franchise tax, on the other hand, is in the nature of a license or privilege tax properly classified as an excise tax, and the two may be computed separately and without relation to each other. See *Head v. Cigarette Sales Co.*, 188 Ga. 452 (2), 456 (4 S. E. 2d 203.)

The foregoing view is reinforced with respect to the accounts receivable feature of this case, at least, by the following facts: In an act approved February 25, 1949, expressly amending Section 3(b) of the 1937 act a proviso was added to that section. The 1953 act, while not expressly amending the 1937 act, has been treated by the parties to this case as imposing the tax assessed here. It contains substantially an identical proviso as that incorporated in the 1949 act. This proviso reads as follows: "Any sale or transfer of accounts receivable or notes not representing credits secured by real estate to a nonresident of this State shall be void so far as tax liability hereunder is concerned. Sales or transfers to nonresidents of such accounts and notes receivable retaining any interest whatever to the seller shall be void as against tax liability hereunder. The physical removal of such accounts receivable and notes from the State of Georgia by any person doing business in said State shall not avoid liability for the tax herein imposed." Ga. L. 1953, Nov.-Dec. Sess., p. 382.

From the wording of these acts as quoted above, it is manifest that it was the intention of the General Assembly to impose a tax on all the accounts receivable of all persons (including corporations) domiciled in the State of Georgia irrespective

of the physical location of the same. It is difficult to see how the legislature could have made its intention more plain than it did when it enacted the last sentence of the proviso contained in the 1953 act that "the physical removal of such accounts receivable and notes from the State of Georgia by any person doing business in said State shall not avoid liability for the tax herein imposed."

It follows that the affidavit of illegality set up no defense to the levy of the execution in this case and the judge of the superior court did not err in dismissing it on its merits.

*Judgment affirmed.* *Townsend, P. J., Frankum and Jordan, JJ., concur.*