52251. SMILEY v. DAVENPORT et al.

Quillian, Judge.

Petitioner's interlocutory appeal was granted by this court from an adverse ruling by the trial court to his "Application for Preliminary Hearing," to dismiss plaintiff's action against him for "lack of jurisdiction" and "insufficient service of process."

Petitioner, defendant below, was a doctor in the United States Air Force who entered the military service from the State of Michigan in July 1970. In July of 1972 he received permanent change of station orders transferring him to Atlanta, Georgia, to serve as a Fellow in Cardiology Medicine at Grady Memorial Hospital.

He was serving in that capacity on October 10, 1972, the date plaintiff Brenda Mae Davenport allegedly received "an extremely severe electrical shock from a defibrillator while she was performing her duties as a nurse in the Grady Memorial Hospital." On May 23, 1973, plaintiff filed a complaint in the Superior Court of Fulton County naming petitioner and others as defendants. During the pendency of that action in June of 1974, petitioner again received permanent change of station orders which transferred him to Lackland Air Force Base, Texas. On December 26, 1974, approximately 6 months after petitioner left Georgia for Texas, plaintiff dismissed her action "without prejudice" and subsequently refiled the present action against the same defendants on June 24, 1975. Service was attempted to be made on petitioner by service of a second original in Texas, pursuant to Georgia's Long Arm Statute, Code Ann. § 24-113.1 (Ga. L. 1966, p. 343; 1970, pp. 443, 444). Petitioner pleaded the defenses of lack of jurisdiction over his person and insufficient service of process in his answer, and subsequently filed an Application for Preliminary Hearing to dismiss on those grounds. The trial court denied the application and this appeal is before us via certificate for immediate review. *Held:*

1. As the trial court's order denying the Application for Preliminary Hearing did not state the basis for the denial, we are faced with two issues. Was the denial based on the determination by the court that the petitioner was not legally domiciled in Georgia on the date of the incident—which would make him come within the status of those within reach of our Long Arm Statute, or did the court determine from the evidence presented that "the question of domicile is a mixed question of law and fact, and is ordinarily one for a jury. . ." *Pugh v. Jones,* 131 Ga. App. 600, 604 (4) (206 SE2d 650).

2. Petitioner was born and reared in the State of

Pennsylvania. There he attended grade and high school, college and medical school. He registered to vote in Pennsylvania in 1963. He moved to Michigan in June 1968 and remained there until July of 1970 when he entered the military service and was stationed at San Antonio, Texas. He did not register to vote in Michigan but did register in Texas in 1972. He paid state income taxes to Michigan and "non-resident" income taxes to the City of Highland Park, Michigan for the first six months of 1970. He paid no state income taxes for the years 1971 through 1974.

He was transferred to Georgia in July 1972 on military orders and purchased a home in DeKalb County. Thereafter, he lived at that residence until his transfer to Texas on military orders in June 1974. He paid realty taxes on his residence and registered to vote in July 1972, in DeKalb County and thereafter voted at Rainbow Elementary School, DeKalb County.

His Michigan medical licenses for 1972 through 1974 specified his residence as DeKalb County, Georgia. He was also listed as a Georgia resident on his federal income tax returns and with the American Osteopathic Association, the American Board of Internal Medicine, and the Georgia Heart Association. During petitioner's stay in Georgia he had two automobiles. Both were titled and registered in the State of Michigan.

If petitioner was a legal resident of DeKalb County, Georgia, on the date of the incident which was the basis for this action, and thereafter became a nonresident by moving out of the state, he would not be amenable to service under the provisions of Georgia's Long Arm Statute. *Thompson v. Abbott,* 226 Ga. 353 (2) (174 SE2d 904). Accordingly, we must first determine whether petitioner was a resident of Georgia.

Ordinarily we would state that there are three types of abode—sojourn, residence, and domicile. *Davis v. Holt,* 105 Ga. App. 125, 130 (123 SE2d 686). However, Code § 102-103 states that "abode" means "domicile," and this would contribute to already existing confusion of these terms. We will refer to three types of "habitat," trusting that this word has not been legislatively or judicially corrupted. As an example of the confusion referred to, our

courts have consistently held that the words "residence" and "domicile" are not synonymous and convertible terms. *Davis v. Holt,* 105 Ga. App. 125, supra; *Odom v. Beard,* 114 Ga. App. 364 (151 SE2d 468); *Pugh v. Jones,* 131 Ga. App. 600, supra; *Avery v. Bower,* 170 Ga. 202, 204 (152 SE 239). However, Code Ann. § 34-103 (aa) (Ga. L. 1964, Extra Sess., pp. 26, 28; 1970, pp. 347, 349), provides: "The word 'residence' shall mean domicile." Confusion arises when the statutes refer to "residence" when they mean "domicile," and courts interpret "residence" to mean "residence" rather than "domicile" or "legal residence."

The difference between a sojourner, resident and domiciliary is one of intent. To become a sojourner, no intent is necessary. It may be defined as meaning a temporary stay or temporary visit as that of a traveler in a foreign land—a sojourner. See 81 CJS 336. Resident, when used as a noun is generally understood to mean more than mere physical presence and the transient visit of a person for a time does not make that person a resident. See 77 CJS 305. Residence usually includes an intent to live in the place for the time being. *Davis v. Holt,* 105 Ga. App. 125, supra at 130. Domicile, unlike residence, means a permanent place of habitat. *Avery v. Bower,* 170 Ga. 202, 206, supra. A person may have several residences, but only one domicile. Id. at 204. It has been the considered opinion of prior decisions of this court that a service person is a "temporary sojourner." *Vinson v. Porter,* 126 Ga. App. 555 (191 SE2d 297). Accord, *G. M. A. C. v. Monday,* 79 Ga. App. 609 (54 SE2d 479); *Evans v. Brooks,* 93 Ga. App. 352 (91 SE2d 799); *Coggins v. Rhodes,* 113 Ga. App. 837 (149 SE2d 834); *Webb v. Oliver,* 133 Ga. App. 555 (211 SE2d 605).

We do not take issue with the holdings of these cases. However, it is common knowledge that some service personnel attempt to secure the most benefits from both worlds—the military and the civilian. The service person absent from the state of his domicile can avoid payment of income taxes and certain other fees under the Soldier's and Sailor's Civil Relief Act (50 App. USC § 501, et seq., as amended) to the state where he is stationed and attempt to avoid payment of taxes to the state of his domicile because of his absence therefrom.

"A person's domicile is usually the place where he has his home." Restatement of the Law Second, Conflict of Laws 2d, Chap. 2, Domicile § 11. The domicile of origin is that acquired at birth. For a legitimate child, it is that of his father. Id. § 14. He does not lose that domicile until he acquires another and a domicile of choice may be acquired by one legally capable of changing his domicile. Id. § 15. This requires (a) physical presence, and (b) an intent to make that place his home. Id. §§ 15, 18. "No definite amount of time spent in a place is essential to make that place a home." Id. § 12e. In Georgia "[t]he domicile of a person sui juris may be changed by an actual change of residence with the avowed intention of remaining." Code § 79-406. "And there is no merit in the contention . . . that one in the military service has no right to change his legal residence. It is as competent for a soldier to abandon his domicile or residence and acquire a new one as it is for any other citizen to do so." *Engram v. Faircloth,* 205 Ga. 577 (1) (54 SE2d 598). "When [defendant] entered the [Air Force] he did not as a matter of law lose his domicile. . .Nor did he as a matter of law become a domiciliary resident of another State." *Dicks v. Dicks,* 177 Ga. 379, 384 (170 SE 245).

The existence or nonexistence of domicile in any given locality, where the facts are conflicting, is a mixed question of law and fact and insofar as it involves ascertainment of the intention of the party, it is solely within the province of the jury. *Forlaw v. Augusta Naval Stores Co.,* 124 Ga. 261 (52 SE 898); *Commercial Bank v. Pharr,* 75 Ga. App. 364, 377 (43 SE2d 439); *Williams v. Williams,* 226 Ga. 734 (177 SE2d 481). There is a caveat to this rule. "The question of domicile is a mixed question of law and fact and is ordinarily one for a jury. . .and should not be determined by the court as a matter of law except in plain and palpable cases." *Campbell v. Campbell,* 231 Ga. 214, 215 (200 SE2d 899). Accord, *Smith v. Smith,* 136 Ga. 197 (71 SE 158); *Patterson v. Patterson,* 208 Ga. 7, 13 (64 SE2d 441). We have found no judicial definition for the term "plain and palpable," but this court held in *Commercial Bank v. Pharr,* 75 Ga. App. 364, 377, supra: "Although the rule is well settled in this State that domicile or residence is one of fact for the jury in cases

where the evidence is in conflict (*Mayo v. Ivan Allen-Marshall Co.,* 51 Ga. App. 250, 180 SE 20), on the other hand, where the evidence is not in conflict, we are of the opinion that this is a question of law for this court."

We have concluded that the evidence of domicile demanded a finding that petitioner was a domiciliary of Georgia. All affirmative indicia of domicile showed Georgia to be the legal residence of defendant. Evidence of registration and titling of his cars in Michigan is not such evidence to substantially refute the affirmative evidence of domicile. Michigan is the one state where defendant did not register to vote or purchase a home, but paid a "nonresident" income tax. The failure to file income tax with the State of Georgia is inconclusive as he paid no income tax to any state during the years 1971 to 1974. We find no substantial conflict in the evidence of domicile. Plaintiff cites *Williams v. Williams,* 226 Ga. 734 (177 SE2d 481), as controlling this issue. We find *Williams* inapposite. There the plaintiff's evidence showed he was domiciled in Georgia where he bought and maintained a residence. However, defendant's evidence showed he lived in Pennsylvania and had registered to vote there. As the affirmative evidence of domicile was directly in conflict, the court held that the issue "could legally be determined only by the jury." Id. at 737.

Particularly persuasive to us in the instant case was evidence of registration to vote and voting in Georgia elections. Only citizens of this state may vote in any Georgia primary or election. Code Ann. § 34-602 (Ga. L. 1964, Extra. Sess. pp. 26, 45; 1968, p. 847; 1970, pp. 383, 384; 1971, Extra. Sess., pp. 61-64; Note: the 1974 and 1975 changes are not applicable to the instant case.) Neither "residence" nor "domicile" standing alone, furnishes all the qualifications for voting, but "one must vote at the place of his domicile" even though he be temporarily residing elsewhere. *Avery v. Bower,* 170 Ga. 202, supra.

As the evidence of record demanded a finding of domicile for petitioner in Georgia at the time of the incident (see *Coggins v. Rhodes,* 113 Ga. App. 837, supra; *Commercial Bank v. Pharr,* 75 Ga. App. 364, 377, supra; *Patterson v. Patterson,* 208 Ga. 7, supra), the trial court erred in failing to dismiss plaintiff's action as he was not

amenable to service under the provisions of Code Ann. § 24-113.1. *Thompson v. Abbott,* 226 Ga. 353, supra.

*Judgment reversed. Deen, P. J., concurs. Webb, J., concurs in the judgment only.*

ARGUED MAY 24, 1976 — DECIDED SEPTEMBER 10, 1976 — REHEARING DENIED OCTOBER 4, 1976 — 

*Jones, Bird & Howell, Jack Spalding Schroder, Jr., Joseph W. Crooks,* for appellant.

*Ford & Kahn, Murray Z. Kahn, G. Fred Bostick,* for appellees.