NEWARK FIRE INSURANCE COMPANY, PROSECUTOR, v. STATE BOARD OF TAX APPEALS AND CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, RESPONDENTS.

Submitted May 4, 1937—Decided August 31, 1937.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Arthur T. Vanderbilt*.

For the respondents, *Frank A. Boettner* and *John A. Matthews*.

The opinion of the court was delivered by

PERSKIE, J.   The question before us concerns the validity of the personal property assessment made by the city of Newark on October 1st, 1934, for the year 1935 against prosecutor.   The assessment was made in accordance with our General Tax act.   *Pamph. L.* 1918, *p.* 858, ¶ 307, as amended.

Prosecutor is a general fire insurance company organized under the laws of this state with its registered office at 31 Clinton street, in the city of Newark.   For six years prior to the assessment its main and executive offices have been and now are at 150 William street, in the city of New York. Prosecutor's general business is conducted in New York, and

all the books of the company, except those required by law to be kept at its registered office in New Jersey, are located there. Although a small amount of cash and some few securities are kept in New Jersey so that business may be done here, the great majority of these items is either in the New York offices or in banks in that state. The business conducted at the Newark office is confined to local regional underwriting and the adjustment of claims arising therefrom. Reports on such business are sent to the main office in New York. The record also discloses that prosecutor pays no personal property tax in New York, and, for aught that appears, no such tax is exacted by that state.

The state board of tax appeals affirmed the assessment as made by the taxing authorities of Newark thereby assessing the intangible property owned by prosecutor. This court granted *certiorari* and prosecutor argues that the assessment as made should be reduced because (1) New Jersey has no jurisdiction to tax the intangibles; and (2) because it was error to include the item of unearned premium reserve as a taxable asset.

*First: As to jurisdiction to tax prosecutor in this state.* This question must, in light of the proofs, be considered upon the inescapable premise that prosecutor had its business *situs* as of October 1st, 1934, and still has it, in New York; that the securities, the personalty involved, have become an integral part of its business *situs* in New York; but that prosecutor pays no personal property tax to the State of New York.

It is fundamental that jurisdiction to tax depends primarily on the type of tax sought to be exacted and the property that is subject to the tax. Here the tax, under the act, is a personal property tax. The property subject to the tax constitutes securities which represent paid in capital stock and accumulated surplus of the company. Such securities are clearly intangibles. It is well settled that intangible personalty is taxable at the domicil of the owner. *Kirtland* v. *Hotchkiss,* 100 *U. S.* 491; *Blodgett* v. *Silberman,* 277 *Id.* 1; *Farmers Loan and Trust Co.* v. *Minnesota,* 280 *Id.* 204. That principle finds its support in the legal maxim *mobilia sequun-*

*tur personam.* The use of this maxim like the use of most other maxims in jurisprudence, is not the solution of the problem; it is merely a formal and unexplanatory statement of a legal conclusion. *Cf.* 9 *Harvard Law Review* 13; 8 *Am. L. Rev.* 519. Thus frequently its use is not very helpful. But since contrary to the case of tangibles, intangibles have no actual *situs,* are not physically under the definite control of any one jurisdiction, the rule is embraced in the maxim developed and is justified even to this day as a rule of convenience. Convenience, however, brings hardship. So it was not long before exceptions to the general rule as stated gradually found and worked themselves into the law. Thus it has been held that where intangible personal property became an integral part of a business carried on in a state other than that of the domicil of the owner of the intangibles, then that other state, the state wherein the intangibles acquired a "business *situs,*" had jurisdiction to levy a personal property tax upon these intangibles. *New Orleans* v. *Stempil,* 175 *U. S.* 309; *Metropolitan Life Insurance Company of New York* v. *New Orleans,* 205 *Id.* 395; *Wheeling Steel Corp.* v. *Fox,* 298 *Id.* 193; *Safe Deposit and Trust Co.* v. *Virginia,* 280 *Id.* 183; *Farmers Loan and Trust Co.* v. *Minnesota,* 280 *Id.* 204; *First National Bank of Boston* v. *Maine,* 284 *Id.* 312; see 76 *A. L. R.* 806. Conceding the application of this exception to the general rule, the problem soon arose as to whether, when the "business *situs*" theory did apply, the state of the domicil could still tax. The answer to that question is not free from serious doubt, a doubt which the Supreme Court of the United States has sounded notwithstanding its holding that the state of the domicil might tax even though the "business *situs*" theory applied. *Cream of Wheat Co.* v. *County of Grand Forks,* 253 *U. S.* 325. It is interesting to observe the growing tendency of this doubt. It manifests itself both prior to and subsequent to the holding in the *Cream of Wheat* case. For example, in the case of *Union Refrigerator Transit Co.* v. *Kentucky,* 199 *Id.* 194, decided prior to the *Cream of Wheat* case, and in the case of *Frick* v. *Pennsylvania,* 268 *Id.* 473 (overruled on other grounds), it was held that tangible property may be taxed only by one

state; and again the court has held, since the *Cream of Wheat* case, that in the absence of the applicability of the "business *situs*" exception, only the state of the domicil might tax intangibles. *Farmers Loan and Trust Co.* v. *Minnesota, supra; Baldwin* v. *Missouri,* 281 *Id.* 586; *Beidler* v. *South Carolina Tax Commission,* 282 *Id.* 1; *First National Bank of Boston* v. *Maine, supra.* In so holding the court was very careful to point out, notwithstanding its holding in the *Cream of Wheat* case, that the question involving the right of the domiciliary state to tax when the "business *situs*" exception applied is an open one. Decision thereof has been expressly reserved. *Cf. Farmers Loan and Trust Co.* v. *Minnesota, supra* (at *p.* 213), and *First National Bank of Boston* v. *Maine, supra* (at *p.* 331). While this doubt has been cast by the highest court of our land, that body has never expressly overruled its decision in the *Cream of Wheat* case. Until such time as that case is reconsidered, we are bound by its holding that there is a sufficient interrelation between the state of the domicil and the intangibles which have acquired a business *situs* elsewhere to justify the imposition of a personal property tax by the former upon the latter.

Nor de wo, by so deciding, run afoul of the strong modern sentiment against multiple taxation as manifested by the United States Supreme Court. See *Farmers Loan and Trust Co.* v. *Minnesota, supra* (at *p.* 212); *First National Bank of Boston* v. *Maine, supra* (at *pp.* 326, 334). For, as has been pointed out, prosecutor pays no personal property tax in New York. Thus under the circumstances here exhibited multiple taxation is impossible. Prosecutor may not invoke the *dictum* that "the rule of immunity from taxation by more than one state * * * is broader than the application thus far made of it." *First National Bank of Boston* v. *Maine, supra* (at *p.* 326).

*Second: As to the item of unearned premium reserve.* We are aware of the fact that sound accounting practice may require this item to be booked as a liability. Nor are we unmindful of the many things that may be said in favor of such a requirement. Modern statistical analyses available to companies in the position of prosecutor may and do com-

pute to a very accurate degree just what part of such reserve will be expended each year. But companies control the fund so set up. They invest them and earn a return upon them. Because of these factors our sister states have divided upon the answer to this problem. See 13 *A. L. R.* 189, *et seq.* Our Court of Errors and Appeals has taken the position that this item, at least for the purpose of taxation, should be considered an asset. *City of Trenton* v. *Standard Fire Insurance Co.,* 77 *N. J. L.* 757; 73 *Atl. Rep.* 606. Whether the reserve set up consists of exempt securities, and the exemption of the reserve fund as claimed would thus result in a double deduction is not made clear. But be that as it may, this court is bound by the decision in the case of *City of Trenton* v. *Standard Fire Insurance Co., supra.*

*Third:* The parties stipulated before the board that prosecutor had cash on hand or on deposit as of October 1st, 1934, of $532,784.54 of which amount the sum of $6,425.32 was deposited in banks in New Jersey and the balance of $526,359.22 represents cash on hand in either the New York office or on deposit in New York banks. The state board determined that this item was exempt under *Pamph. L.* 1933, *ch.* 165, *p.* 346. Respondent's argument that this determination is incorrect, if properly before us, is sound. Prosecutor's cash on hand or on deposit as of October 1st, 1934, was not exempt; it was taxable. *Newark* v. *State Board of Tax Appeals,* 118 *N. J. L.* 131; 191 *Atl. Rep.* 843. We are, of course, under section 11 of our *Certiorari* act (1 *Comp. Stat.* 1709-1910, *pp.* 402, 406), obliged to "determine disputed questions of fact as well as of law * * *." But that, under the circumstances exhibited and generally stated, means disputes, as to facts or law or both, properly raised. Is the point properly before us? We think not. True, it was raised and disputed before the state board of tax appeals; the latter passed judgment upon it. But it is also true that, save as to the argument made here upon the point, respondents permitted the judgment of the board to stand unchallenged. It cannot now properly be heard to complain. The fact of the matter is that, notwithstanding its argument to the contrary, respondents conclude their brief with the sub-

mission "that the judgment of the state board of tax appeals should be affirmed and the writ of *certiorari* dismissed."

The judgment of the state board of tax appeals is, therefore, affirmed, with costs.