NEWARK FIRE INSURANCE CO. *v.* STATE BOARD OF TAX APPEALS ET AL.*

No. 449. Argued April 18, 19, 1939.—Decided May 29, 1939.

---

*Together with No. 456, *Universal Insurance Co. et al.* v. *State Board of Tax Appeals et al.*, also on appeal from the Court of Errors and Appeals of New Jersey.

*Mr. Arthur T. Vanderbilt* for appellant in No. 449. *Mr. John G. Jackson,* with whom *Messrs J. G. Shipman* and *Paul B. Barringer, Jr.* were on the brief, for appellants in No. 456.

*Mr. Donald R. Richberg,* with whom *Messrs. John A. Matthews, Andrew B. Crummy,* and *Raymond C. Cushwa* were on the brief, for appellees.

The CHIEF JUSTICE announced the judgments of the Court, viz., that the judgments are affirmed with costs. MR. JUSTICE McREYNOLDS dissenting.

MR. JUSTICE REED announced an opinion in which the CHIEF JUSTICE, MR. JUSTICE BUTLER and MR. JUSTICE ROBERTS concurred.

The controversy in No. 449 relates to the jurisdiction of New Jersey to tax the appellant upon the full amount of its capital stock paid in and accumulated surplus. The case is here by appeal under § 237 (a) of the Judicial Code.[1]

Chapter 236 of the Laws of 1918[2] is a general act for the assessment and collection of taxes. Section 202 subjects all real and personal property within the jurisdiction of New Jersey to taxation annually at its true value. By § 301 the tax on other than tangible personal property is assessed on each inhabitant in the taxing district of his residence on the first day of October in each year. Section 305 deals with domestic corporations as residents of the district in which their chief office is located and renders their personal property taxable in the same manner as that of individuals, except as otherwise provided. Section 307, the most vital in the case, provides:

"Every fire insurance company and every stock insurance company other than life insurance shall be assessed in the taxing district where its office is situate, upon the full amount of its capital stock paid in and accumulated surplus; . . . no franchise tax shall be imposed upon any such fire insurance company or other stock insurance company included in this section."

[1] 28 U. S. C. § 344 (a).

[2] N. J. Laws 1918, p. 847; also in N. J. Rev. Stats. 1937, § 54: 4.

The appellant is a stock fire insurance corporation organized under the laws of New Jersey which at the time of this assessment required it to locate its principal office and to conduct its general business in the state.[3] It is stipulated that a registered office is maintained in Newark, New Jersey, together with such books as the law requires to be kept within the state. The only business carried on in this Newark office is a local or regional claim and underwriting department for Essex and three other counties. No executive officer is there and reports are sent to the New York office. The stipulation further shows that the company's "executive officers and its executive office are located at 150 William Street, New York City. The general accounts of the company are kept in the office in New York City. The general accounting, underwriting and executive offices of the company are all located at the main office at 150 William Street, New York City. All cash and securities of the company are located there or in banks in that City or in other banks outside of the State of New Jersey, with the exception of the sum of $6,425.32 on deposit in New Jersey banks. All of the general affairs of the company are conducted at the main office in New York City and have been so conducted there since appellant moved its main office from Newark six years ago." No personal property tax is paid in New York. The company does pay there a franchise tax based upon premiums.

The Board of Assessment of the City of Newark made an assessment, as of October 1, 1934, upon the capital stock paid in and accumulated surplus of the appellant, with deductions for debts and exemptions allowed by law. The assessment was sustained, in succession, by the

---

[3] N. J. Laws 1902, c. 134, § 3, second, 408; N. J. Laws 1929, c. 6, § 3, second, p. 18, and c. 47, § 1, p. 82. By c. 164 of N. J. Laws 1937, this was amended to read that the certificate of incorporation must set forth "the place where the principal office of the said company in this State is to be located."

Essex County Board of Taxation, by the New Jersey
State Board of Tax Appeals, now an appellee, by the
Supreme Court,[4] and by the Court of Errors and Appeals,
the highest court in the state.[5] Throughout the proceed-
ings below the appellant resisted the jurisdiction of New
Jersey to tax on the ground that its intangibles had ac-
quired a business situs and the corporation a tax domicile
in New York. Throughout, the state tribunals treated
the assessment as upon personal property with a busi-
ness situs in the sister state. The Supreme Court char-
acterized the exaction as a personal property tax and
discussed its validity "in the light of the proofs . . . upon
the inescapable premise that . . . the securities, the
personalty involved, have become an integral part of
[appellant's] business *situs* in New York . . ."[6] It held
that the state of domicile may impose a personal property
tax upon intangibles which have acquired a business situs
in another state and added that, in the absence of a New
York personal property tax, multiple taxation was im-
possible. The Court of Errors and Appeals of New
Jersey, per curiam, affirmed the judgment for the reasons
expressed in the opinion of the Supreme Court.[7]

Appellant urges error in sustaining the assessment in
the face of the conclusion that the tax is a property tax
upon intangibles with a business situs in New York, the
commercial domicile of the corporation. Such approval,
it is claimed, violates the due process clause of the 14th
Amendment.

The present tax, as administered, is levied upon an
assessment of the full amount of capital stock and sur-
plus. It is a tax on the net value of the corporation less
allowable deductions, reached by taking liabilities from
gross value of assets and subtracting exempt items from

[4] 118 N. J. L. 525; 193 A. 912.
[5] 120 N. J. L. 185; 198 A. 836.
[6] 118 N. J. L. at 526; 193 A. 912.
[7] 120 N. J. L. 185; 198 A. 836.

the remainder. This is apparently because capital stock and surplus are treated as invested in the exempt assets.[8] The value thus assessed is not determined by specific items but is the result of a calculation in which all assets are involved except those definitely exempted. Our conclusion makes it unnecessary to resolve doubts as to whether this is a property tax.

When a state exercises its sovereign power to create a private corporation, that corporation becomes a citizen, and domiciled in the jurisdiction, of its creator.[9] There it must dwell.[10] The dominion of the state over its creature is complete.[11] In accordance with the ordinary recognition of the rule of *mobilia sequuntur personam* to determine the taxable situs of intangible personalty,[12] the presumption is that such property is taxable by the state of the corporation's origin.[13] This power of New Jersey to tax is made effective by § 307 of the Act of 1918, heretofore quoted. It is the only tax sought by the state from corporations of this type, as the franchise tax, at one time levied,[14] was repealed by the Act of April 8, 1903.[15]

[8] *Fidelity Trust Co.* v. *Board of Equalization*, 77 N. J. L. 128, 130; 71 A. 61.

[9] *Lafayette Insurance Co.* v. *French*, 18 How. 404; *St. Louis* v. *Wiggins Ferry Co.*, 11 Wall. 423, 429; *Seaboard Rice Milling Co.* v. *Chicago, R. I. & P. R. Co.*, 270 U. S. 363, 366; *Fairbanks Steam Shovel Co.* v. *Wills*, 240 U. S. 642. Cf. *International Milling Co.* v. *Columbian Transp. Co.*, 292 U. S. 511, 519.

[10] *Bank of Augusta* v. *Earle*, 13 Pet. 519, 588.

[11] *Oklahoma Gas Co.* v. *Oklahoma*, 273 U. S. 257, 259; *Canada Southern Ry.* v. *Gebhard*, 109 U. S. 527, 537–38.

[12] *Safe Deposit & Trust Co.* v. *Virginia*, 280 U. S. 83, 92; *Blodgett* v. *Silberman*, 277 U. S. 1, 9.

[13] *Cream of Wheat Co.* v. *Grand Forks*, 253 U. S. 325, 329; *Virginia* v. *Imperial Coal Sales Co.*, 293 U. S. 15, 19; *First Bank Stock Corp.* v. *Minnesota*, 301 U. S. 234, 237. Cf. *Johnson Oil Co.* v. *Oklahoma*, 290 U. S. 158, 161.

[14] Act of April 18, 1884, N. J. Laws 1884, c. 159, p. 232.

[15] N. J. Laws 1903, c. 208, p. 394.

There are occasions, however, when the use of intangible personalty in other states becomes so inextricably a part of the business there conducted that it becomes subject to taxation by that state.[16] The carrying on of the business of the corporation in New York, it is urged, has withdrawn its intangibles completely from the tax jurisdiction of New Jersey. With the assumption of a business situs and commercial domicile in New York, that state, under the authorities cited, would have the right to tax intangibles with this relation to its sovereignty. Appellant contends that if New York may levy a property tax on these intangibles, it will violate the due process clause of the 14th Amendment to permit New Jersey to do the same thing; that property cannot be in two places; that if it is in New York for tax purposes, it cannot be in New Jersey. We are asked to decide that both states have not the power to tax the same property for the same incidents. This question has been heretofore reserved.[17] We do not find it necessary to answer it in this case.

Where consideration has been given to the existence of a business situs of intangibles for taxation by a state other than the state of domicile, there has been definite evidence that the intangibles were integral parts of the business conducted. In so far as the conclusion as to the existence of a business situs for the purpose of taxation, distinct from the domiciliary situs, is the basis for a claim of a federal right, the duty of inquiring into the

---

[16] *New Orleans* v. *Stempel*, 175 U. S. 309; *Bristol* v. *Washington County*, 177 U. S. 133; *State Board* v. *Comptoir National D'Escompte*, 191 U. S. 388; *Metropolitan Life Ins. Co.* v. *New Orleans*, 205 U. S. 395; *Liverpool & L. & G. Co.* v. *Board of Assessors*, 221 U. S. 346; *Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193; *First Bank Stock Corp.* v. *Minnesota*, 301 U. S. 234.

[17] *First Bank Stock Corp.* v. *Minnesota*, 301 U. S. 234, 237, 241. Cf. *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204, 213; *First National Bank* v. *Maine*, 284 U. S. 312, 331.

evidence which establishes such business situs rests upon this Court.[18]

In the *Stempel, Bristol, Comptoir National, Metropolitan* and *Liverpool* cases, cited in note 16, *supra,* the integration of the foreign-owned intangibles with local activities was evident from the continued course of business. The presence or absence of the evidences of the credits from the jurisdiction was immaterial.[19] The non-resident individuals and corporations carried on continuously a course of lending money or granting credits within the taxing states. The taxed intangibles grew out of these transactions. They were, in fact, a part of them. In the *Wheeling Steel* case, the same type of amalgamation occurred. West Virginia sought to tax a Delaware corporation on accounts receivable and bank deposits. The opinion points out, pages 212 and 213, that these choses in action were the indebtedness for or the proceeds of sales confirmed in West Virginia, attributable "to the place where they arise in the course of the business of making contracts of sale." In *First Bank Stock Corp.* v. *Minnesota,* another Delaware corporation was found to have established a commercial domicile for itself and given a business situs to certain of its intangibles. The intangibles in question were stocks of Montana and North Dakota state banks, purchased and held as part of the corporation's assets in its Minnesota business of holding the shares and managing, through stock ownership, the business of numerous banks, trust companies and other financial institutions of the Ninth Federal Reserve District. As this business was localized in Minnesota, the stocks of these banks were an essential factor of that business and therefore had a taxable situs in Minnesota.

---

[18] *Beidler v. South Carolina Tax Comm'n,* 282 U. S. 1, 8, and cases cited.

[19] *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395, 402.

The conception of a business situs for intangibles enables the tax gathering entity to distribute the burden of its support equitably among those receiving its protection. It makes the notion of a tax situs for particular intangibles more definite. It is not the substitution of a new fiction as to the mass of choses in action for the established fiction of a tax situs at the place of incorporation. To overcome the presumption of domiciliary location, the proof of business situs must definitely connect the intangibles as an integral part of the local activity. The facts presented by this record fall far short of this requirement.

The tax is upon "the full amount of capital stock and surplus" less certain allowed deductions of real estate and exempt securities. The evidence gives no explanation of the amount or source of the assets making up the amount $3,370,080.66 which balances with the capital stock and surplus less these deductions. The stipulation shows "agreed" figures, $8,107,901.83 presumably of capital and surplus, as shown below.[20] Agreed deductions are

[20] " (a) The following figures have been agreed upon. In the first column appears the designation of what the fund represents; opposite each designation appearing the amount of the fund in question:

| | |
|---|---:|
| 1. Capital stock | $2,000,000.00 |
| 2. Surplus (as set forth in the books of the company) | 2,982,940.29 |
| 3. Reserve for unearned premiums | 3,001,623.46 |
| 4. Reserve for taxes | 71,765.65 |
| 5. Reserve for contingencies | 68,915.35 |
| 6. Reserve for reinsurance | 4,228.36 |
| 7. Agency balances over 90 days old | 119,109.72 |
| 8. Furniture and fixtures (in Newark office) | 1,500.00 |
| Total | $8,250,082.83" |

Reserves for unearned premiums and for reinsurance are a taxable asset in New Jersey. *City of Trenton* v. *Standard Fire Ins. Co.*, 77 N. J. L. 757, 764–765; 73 A. 606. The Board of Tax Appeals held the

$4,737,821.17. But the assessment is $1,069,000. From the stipulation, we learn the "general accounts" are kept in New York City and all cash except $6,425.32 and all securities are located at the New York office or in banks outside of New Jersey. If we assume that the "general accounts" mentioned are the company's claims against agents, other insurance companies, and similar bills receivable, no progress is made towards their identification with New York business. Nothing is shown as to the volume of New York business in comparison with New Jersey or the other states. We are not told where business is accepted, moneys collected or insurance contracts made. The securities may represent local loans or investments in New Jersey or elsewhere made from funds derived from similar insurance contracts with a business situs at those points.[21] They may be the result of insurance activities of many kinds, taking place far from New York. If we were to assume that the intangibles of a corporation may have only one taxable situs, the mere fact that general affairs of a foreign corporation are conducted by general officers in New York without further evidence of the source and character of the intangibles does not destroy the taxability of a part of these intangibles by the state of the corporation's legal domicile. The presumption of a taxable situs solely in New Jersey is not overturned.

Universal Insurance Company and Universal Indemnity Insurance Company have appeals involving the same questions. By stipulation these cases were consolidated for review below and appeal here.

---

agency balances an asset, and the reserve for taxes a liability which is deductible. Nothing was said about the reserve for contingencies. Addition of the items known to constitute assets—capital stock, surplus, reserve for unearned premiums, reserve for reinsurance, agency balances—equals $8,107,901.83.

[21] *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395.

These appellants are New Jersey insurance corporations, assessed by the City of Newark in the same way, under the same statute and with the same result in the state courts as the appellant in No. 449.

There are no significant distinctions between the cases. A management corporation handles these companies at a New York office, where accounts are payable. Seven per cent of the business of Universal Insurance Company originates in New Jersey. The corresponding percentage for the other company is not shown. As in No. 449, the record is silent as to the character, source and use of the securities and credits.

MR. JUSTICE FRANKFURTER announced the following opinion, concurred in by MR. JUSTICE STONE, MR. JUSTICE BLACK, and MR. JUSTICE DOUGLAS.

Wise tax policy is one thing; constitutional prohibition quite another. The task of devising means for distributing the burdens of taxation equitably has always challenged the wisdom of the wisest financial statesmen. Never has this been more true than today when wealth has so largely become the capitalization of expectancies derived from a complicated network of human relations. The adjustment of such relationships, with due regard to the promotion of enterprise and to the fiscal needs of different governments with which these relations are entwined, is peculiarly a phase of empirical legislation. It belongs to that range of the experimental activities of government [1] which should not be constrained by rigid

---

[1] Compare *Anderson* v. *Dunn*, 6 Wheat. 204, 226: "The science of government is the most abstruse of all sciences; if, indeed, that can be called a science which has but few fixed principles, and practically consists in little more than the exercise of a sound discretion, applied to the exigencies of the state as they arise. It is the science of experiment."

and artificial legal concepts. Especially important is it to abstain from intervention within the autonomous area of the legislative taxing power where there is no claim of encroachment by the states upon powers granted to the National Government. It is not for us to sit in judgment on attempts by the states to evolve fair tax policies. When a tax appropriately challenged before us is not found to be in plain violation of the Constitution our task is ended.

Chapter 236 of the New Jersey Laws of 1918, as applied to the circumstances of these two cases, clearly does not offend the Constitution. In substance, such legislation has heretofore been found free from constitutional infirmity. *Cream of Wheat Co.* v. *Grand Forks,* 253 U. S. 325, affirming 41 N. Dak. 330; 170 N. W. 863. During all the vicissitudes which the so-called "jurisdiction-to-tax" doctrine has encountered since that case was decided, the extent of a state's taxing power over a corporation of its own creation, recognized in the *Cream of Wheat* case, has neither been restricted nor impaired. That case has not been cited otherwise than with approval.[2] Questions affecting the fictional "situs" of intangibles, which received full consideration in *Curry* v. *McCanless, post,* p. 357, do not concern the present controversies. *Cream of Wheat Co.* v. *Grand Forks, supra,* and the cases that have followed it, afford a wholly adequate basis for affirming the judgments below.

---

[2] See *Citizens National Bank* v. *Durr,* 257 U. S. 99, 109; *Schwab* v. *Richardson,* 263 U. S. 88, 92; *Baker* v. *Druesedow,* 263 U. S. 137, 141; *Swiss Oil Corp.* v. *Shanks,* 273 U. S. 407, 413; *Hellmich* v. *Hellman,* 276 U. S. 233, 238; *Montgomery Ward & Co.* v. *Emmerson,* 277 U. S. 573; *Educational Films Corp.* v. *Ward,* 282 U. S. 379, 391; *Nebraska ex rel. Beatrice Creamery Co.* v. *Marsh,* 282 U. S. 799, 800; *First Bank Stock Corp* v. *Minnesota,* 301 U. S. 234, 237.