CRABTREE, J. T. C.
Plaintiff seeks review of defendant’s determination that plaintiff is subject to the New Jersey Corporation Income Tax Act, N.J.S.A. 54:10E-1 et seq. for the calendar years 1974 through 1977. The determination is based upon income attributable to loans made by plaintiff to New Jersey residents. Plaintiff claims that the determination and any tax assessed pursuant thereto violate the Due Process and Commerce Clauses of the United States Constitution, as plaintiff is engaged solely in interstate commerce with no contacts with the State of New Jersey.
The facts are fully stipulated pursuant to R. 8:8-l(b).
Plaintiff is a New Hampshire corporation with its one and only office located in Concord, New Hampshire. Plaintiff files its New Hampshire corporate income tax return on a calendar year basis. It filed its 1974 return on or about June 9, 1975, having obtained an extension of time to do so.
Plaintiff’s sole activity is making unsecured tuition loans to parents of students enrolled in private secondary schools and private and public colleges both within and without the State of New Jersey. Some of the loans are made to parents who are New Jersey residents. Plaintiff’s income is solely derived from the financing charges it receives from tuition loans. Plaintiff estimates that the principal amount of outstanding loans to New Jersey borrowers during the years in issue ranged from $1,700,-000 to $2,150,000.
Plaintiff prepares brochures describing its loan program and those brochures are either mailed directly by plaintiff from its New Hampshire office or by the educational institution involved. Upon receipt of the descriptive brochure the putative borrower completes an application and mails it to plaintiff in New Hampshire, whereupon plaintiff mails an educational loan agreement and credit application to the prospective borrower. The latter signs the agreement, completes the credit application and mails both documents to plaintiff’s New Hampshire office.
*475 Following a credit inquiry, conducted wholly outside the State of New Jersey, the approved borrower is notified of acceptance and is furnished a coupon book with which to make payments. All funds representing loan proceeds are disbursed by mail from plaintiff’s New Hampshire office to the borrower, who remits loan payments monthly by mail to plaintiff in New Hampshire. Sales and clerical personnel located in Concord, New Hampshire, may also accept telephone applications from borrowers who wish to add to their existing loans.
If plaintiff does not receive a borrower’s monthly payment within ten days after its due date, plaintiff mails a written notice to the delinquent debtor from plaintiff’s New Hampshire office. Further delays in payment are followed by telephone calls and more delinquency notices until the delinquent account is referred (in the case of a New Jersey borrower) to an Irvington, New Jersey, law firm for institution of legal action to effectuate collection. During the years 1975, 1976 and 1977 plaintiff instituted ten collection suits in New Jersey to recover aggregate delinquencies of approximately $13,000.
All plaintiff’s loans are unsecured. It never took a wage assignment from a New Jersey borrower.
Beginning in 1977 plaintiff offered a budgeted monthly prepayment plan. Under this plan no loan is made but parents commence payments to plaintiff before a student starts school. Plaintiff handles payment to the educational institution when fees are due.
Plaintiff employs seven district sales managers, who call upon school administrators and financial officers to describe the availability of plaintiff’s services. It is through the contact of these managers with school officials that plaintiff obtains the names and addresses of prospective borrowers, i.e., parents of the students.
Each district manager has an associate list of schools and a prospect list of schools. The associate list is comprised of schools from which plaintiff has obtained a mailing list of the students’ parents, to whom plaintiff (or the school) mails plaintiff’s bro *476 chures. The prospect list consists of schools which plaintiff attempts to interest in its loan program. Plaintiff furnishes a prospect list to each district manager, who is free to make contact with any school or college in his area in order to generate interest in plaintiff’s loan program. However, plaintiff’s management at its New Hampshire headquarters decides whether any particular prospect school has the loan potential to warrant further business promotion by the district manager.
During the years under review John F. Southwood, Jr. and John Kelly were the only district managers whose respective districts included New Jersey. Southwood lives in Maryland, Kelly lives in New York. Neither of them has an office. Plaintiff’s Concord, New Hampshire, office is shown on their business cards as their business address. Southwood covered southern New Jersey (from Princeton southward), while Kelly was responsible for Northern and Central New Jersey. South-wood’s territory embraced several other states, including Oregon, Washington and Northern California. Kelly was also assigned to New York City, Long Island and all of the New York counties abutting the Hudson River north to Poughkeepsie, and all of Connecticut. During the years in issue Southwood was responsible for 145 associate schools and 146 prospect schools in 1974 and 1975, and 212 associate schools and 179 prospect schools in 1976 and 1977. The New Jersey representation in these totals was seven associates and seven prospects in all years in issue. Kelly’s list of associates ranged from 106 in 1974 and 1975 to 119 in 1976 and 1977; his prospect list numbered 158 in 1974 and 1975 and 169 in 1976 and 1977. The New Jersey representation was 12 associates and 28 prospects in 1974 and 1975 and 13 associates and 32 prospects in 1976 and 1977. Kelly estimates that he spent approximately 15% to 20% of his time in New Jersey from September through June of each year. Southwood estimates that he spent 3% to 5% of his time in New Jersey during the same time span.
The duties and responsibilities of Kelly and Southwood are the same as those of plaintiff’s other district managers throughout the United States. District managers are salaried employees, *477 not commission salesmen. They meet at a school with a school administrator, financial officer or business manager. The district manager visits an associate school at least annually to explain changes in plaintiff’s brochures, to arrange for printing of plaintiff’s materials and to answer any questions that may arise during the year. Schools on the prospect list are also visited annually.
The district manager does no mailing. When he visits a school he brings a file consisting of a Printing Order Information Form and Tuition Plan Prepayment Program, with specific reference to the school, some Tuition Plan brochures, and sales aids including statistics and information dealing with trends in education costs and enrollments.
The district manager also attends financial aid conferences and meetings. He never communicates with a borrower or student; he never addresses parent groups, and no borrower or student ever communicates with a district manager.
Plaintiff reimburses the district manager for all his expenses incurred in connection with plaintiff’s business. In addition, plaintiff provides the district manager with a car owned or leased by plaintiff as well as a $50 a month entertainment allowance.
The schools furnish plaintiff with school catalogs. Some schools also provide plaintiff with computer lists or labels. Plaintiff pays for the latter items. Plaintiff pays no renumeration to any school for names and addresses of students’ parents.
Plaintiff has no office in New Jersey and no mailing address in this State. It has no officers, employees, agents or representatives whose offices are located in New Jersey. Plaintiff neither owns nor leases real property in New Jersey. No agent or employee of plaintiff utilized any property owned or leased by plaintiff in New Jersey other than the aforementioned district managers’ automobiles. Plaintiff has no New Jersey bank accounts, nor is it listed in any New Jersey telephone directory. It has no billboards in this State and it engages in no advertising here except for its direct mailings to present or prospective borrowers.
*478 The income which defendant seeks to tax is a portion of the same income previously taxed by New Hampshire.
On April 12,1978 plaintiff filed a Notice of Business Activities Report with defendant with respect to the taxable year 1977. Such report was filed pursuant to the Corporation Business Activities Reporting Act, N.J.S.A. 14:13-14 et seq. Plaintiff indicated on the report that it received payments in 1977 from New Jersey residents or businesses located in New Jersey aggregating more than $25,000. Plaintiff disclaimed liability under the Corporation Business Tax Act (N.J.S.A. 54:10A-1 et seq.) and the Corporation Income Tax Act (N.J.S.A. 54:10E-1 et seq.), and it also disclaimed any obligation to obtain a certificate of authority to do business in New Jersey.
On May 16, 1978 an officer of the New Jersey Division of Taxation wrote to plaintiff acknowledging receipt of the aforementioned report and requesting additional information concerning plaintiff’s loans to New Jersey residents. Further correspondence ensued, characterized by the statement and reassertion of conflicting legal positions of the parties, followed in turn by conferences between plaintiff’s counsel and representatives of the Division of Taxation. Finally, on August 14,1979 defendant issued its final determination letter which is the subject matter of this litigation.
Plaintiff contends that the imposition of the New Jersey corporation income tax, under the facts of this case, violates the Due Process Clause of the United States Constitution. U.S. Const., Amend. XIV, § 1. Plaintiff also argues that the tax creates an unconstitutional burden upon interstate commerce. Those two claims are closely related. The tests for ascertaining Due Process and Commerce Clause violations are similar. National Bellas Hess, Inc. v. Dep’t. of Revenue, 386 U.S. 753, 754, 87 S.Ct. 1389, 1390, 18 L.Ed.2d 505 (1967).
In order for a state to tax income generated in interstate commerce the Due Process Clause of the United States Constitution requires a substantial nexus with the taxing state and a fair relationship to the services provided by the state. *479 Commonwealth Edison Co. v. Montana, 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981). In addition, the Commerce Clause requires that the tax be fairly apportioned to local activities and that it be nondiscriminatory in its application to interstate commerce. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977).
I find that plaintiff’s activities in New Jersey amounted to a substantial nexus with this State in the constitutional sense. Plaintiff, through its district managers, engaged in a systematic, regular program of on-site solicitation and exploitation of the New Jersey market. Plaintiff’s representatives paid regular visits to New Jersey educational institutions; they were physically present in this State at least 54 times during each of the years 1974 and 1975 and at least 59 times during each of the years 1976 and 1977. One of plaintiff’s district managers assigned to New Jersey estimated that he spent as much as 20% of his time in this State. The recurring visits of two district managers to New Jersey “made possible the realization and continuance of valuable contractual relations” between plaintiff and the targeted New Jersey schools. Standard Pressed Steel Co. v. Washington Dep’t. of Revenue, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975). The New Jersey schools were indispensable intermediaries for the successful conduct of plaintiff’s income-producing activities. Without the list of parents supplied by the schools plaintiff lacked practical access to a New Jersey loan market. Possession of such lists required assiduous courting and promotion by plaintiff’s representatives, not only with regard to the prospect schools, whose mailing lists plaintiff sought ab initio, but with regard as well to the associate schools, whose updated lists gave plaintiff access to the parents of newly enrolled students. The dollar volume of loans made to parents of New Jersey school students attests to the success of plaintiff’s promotional efforts.
Plaintiff’s New Jersey contacts are strikingly similar to those of the foreign corporation in Clairol, Inc. v. Kingsley, 109 N.J.Super. 22, 262 A.2d 213 (App.Div.), aff’d per curiam 57 N.J. *480 199, 270 A.2d 702 (1970), dismissed for want of a substantial federal question 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643 (1971). There, as in the instant case, the foreign corporation, a Connecticut cosmetic manufacturer, maintained no retail outlets or offices here, nor did it have any bank accounts, telephone listing or mailing address in New Jersey. It owned no New Jersey real property. Nevertheless, the Appellate Division concluded in the face of a constitutional nexus challenge that sufficient activities were carried on within this State to render the corporation subject to the New Jersey corporation business tax. The corporation’s New Jersey activities, conducted through its sales representatives, included assisting druggists in displaying products, rearranging displays, distributing promotional materials and taking inventory. The representatives also called upon beauty salons and explained the use of Clairol products to beauticians. As in the instant case, the representatives were provided with automobiles by their employer.
Plaintiff contends that its contacts with New Jersey were substantially less than the contacts in Clairol and it points, among other things, to the fact that the two district managers assigned to New Jersey neither lived in this State nor maintained an office here, whereas the Clairol salesmen were New Jersey residents. This is a distinction without a difference. Plaintiff’s district managers were physically present in this State more than one day a week, on average, throughout all the years in issue. They visited key school officials in this State. In the course of those visits they explained changes in plaintiff’s loan brochures, arranged for the review and approval of the announcement letter accompanying brochures mailed to prospective borrowers, arranged for the printing of plaintiff’s materials, answered questions and provided statistical information on trends in educational costs and enrollments. Upon occasion, they attended financial aid meetings and conferences.
As the foregoing litany of activities indicates, plaintiff’s contacts with New Jersey went beyond mere solicitation. They indicate a vigorous, systematic and persistent effort, aided by a substantial physical presence, to exploit the New Jersey tuition *481 loan market. Under these circumstances the fact that plaintiff’s New Jersey district managers did not reside in this State is of no significance.
The United States Supreme Court has indicated upon several occasions that satisfaction of the nexus requirement, i.e., a substantial economic presence in the taxing state, leads ineluctably to the conclusion that a fair relationship exists between such presence and services, benefits and protection provided by the taxing state. Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823 (1938); Wisconsin v. J. C. Penney & Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940); Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959); Norfolk & Western R. Co. v. State Tax Comm’n, 390 U.S. 317, 88 S.Ct. 995,19 L.Ed.2d 1201 (1968); Standard Pressed Steel Co. v. Washington Dep’t. of Revenue, 419 U.S. 560, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975). Our own Supreme Court has adopted the same principle. Roadway Express, Inc. v. Director, Taxation Div., 50 N.J. 471, 483, 236 A.2d 577 (1967), app. dism. for want of a substantial federal question 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 274 (1968).
In the present case it can fairly be said that plaintiff’s extensive activities within New Jersey enjoyed the protection and services provided by state and local government, for which the State is entitled to something in return. See Airwork Service Div. v. Taxation Div. Director, 2 N.J.Tax 329, 348-349 (Tax Ct.1981), aff’d o.b. 4 N.J.Tax 532 (App.Div.1982).
Plaintiff also urges a constitutional infirmity in that a state may only tax income earned within its borders. The interest income on plaintiff’s tuition loans, it is argued, was earned in New Hampshire, the domicile of the corporate lender. This same argument is advanced to demonstrate that, as a matter of statutory construction, the taxing statute has no application to plaintiff’s transactions, as N.J.S.A. 54:10E-2 purports to tax only income “derived from sources within New Jersey.”
*482 To be sure, the Due Process Clause of the United States Constitution prohibits a state from taxing income earned beyond its borders. Hans Rees’ Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 (1931); Connecticut General Life Ins. Co. v. Johnson, 303 U.S. 77, 58 S.Ct. 436, 82 L.Ed. 673 (1938); Evco v. Jones, 409 U.S. 91, 93 S.Ct. 349, 34 L.Ed.2d 325 (1977). It is also well settled that the taxable situs of intangibles (such as plaintiff’s loans receivable) is the domicile of the owner-creditor unless the intangible has. been integrated with a business carried on in another state, in which case the taxable situs is in the latter state. Wheeling Steel Corp. v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (1936);. Newark Fire Ins. Co. v. State Bd. of Tax App., 118 N.J.L. 525, 193 A. 912 (Sup.Ct.1937); aff’d per curiam 120 N.J.L. 224, 198 A. 837 (E. & A. 1938), aff’d 307 U.S. 313, 59 S.Ct. 918, 83 L.Ed.2d 1312 (1939); J. B. Williams Co., Inc. v. Glaser, 114 N.J.Super. 156, 275 A.2d 447 (App.Div.1971). Thus, the situs of an intangible and the place where income is earned are one and the same issue.
By reason of plaintiff’s extensive activities in this State, the interest income on plaintiff’s tuition loans to New Jersey residents was earned in New Jersey and the intangibles, i.e., principal and interest on the loans, acquired an independent situs in New Jersey. The interest income is thus amenable to New Jersey taxation. State Dept. of Revenue v. J. C. Penney Co., Inc., 96 Wash.2d 38, 633 P.2d 870 (Sup.Ct.1981); J. B. Williams Co., Inc. v. Glaser, supra. For the same reasons the statute, N.J.S.A.- 54:10E-2, applies to plaintiff’s New Jersey transactions because the interest income sought to be taxed is derived from New Jersey sources.
Plaintiff’s due process challenge is without merit.
Plaintiff’s claim that the taxing statute imposes an unconstitutional burden upon interstate commerce likewise fails.
As stated earlier, a tax is not an undue burden upon interstate commerce if it is fairly apportioned to local activities and nondiscriminatory in its application to interstate commerce. *483 Complete Auto Transit, Inc. v. Brady, supra. Fair apportionment is designed to avoid multiple taxation of the same transaction by two or more states. General Motors Corp. v. Washington, 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964); Airwork Service Division v. Taxation Div. Director, supra. The tax is nondiscriminatory if it places the same burden upon intrastate commerce. McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940).
Although the parties have stipulated that the income which defendant seeks to tax is a portion of the same income previously taxed by New Hampshire, I conclude that there is no multiple taxation here in the constitutional sense. The law of New Hampshire, plaintiff’s domicile, permits apportionment of out-of-state income, whether or not the state in which such income is earned actually imposes a tax thereon. RSA 77-A:3. Plaintiff was aware of its obligation to file a notice of business activities report with defendant pursuant to the Corporation Business Activities Reporting Act, N.J.S.A. 14A:13-14 et seq. Reportable business activities include the receipt of more than $25,000 from New Jersey residents or businesses located in New Jersey. N.J.S.A. 14A:13-15(e). Plaintiff filed its initial report on April 12, 1978, a date prior to the expiration of the period during which a protective refund claim could have been filed in New Hampshire for calendar year 1974, the earliest year involved.[1] The basis of the refund claim would have been the anticipated apportionment of plaintiff’s New Jersey source income in accordance with the aforementioned New Hampshire tax apportionment statute.
Plaintiff has the burden of proving actual multiple taxation. Standard Pressed Steel v. Washington Dep’t. of Revenue, supra; General Motors Corp. v. Washington, supra. The parties’ stipulation that plaintiff has paid New Hampshire tax *484 on the same income which defendant seeks to tax as New Jersey source income under the New Jersey statute cited above does not enable plaintiff to carry that burden. The New Hampshire statute effectively permits exclusion of out-of-state income from New Hampshire taxation, thereby eradicating the vice of duplicative taxation. Plaintiff cannot now be heard to claim multiple taxation which it could have avoided by the timely filing of protective refund claims in New Hampshire.
Plaintiff contends that, since it earns no income in New Jersey, any allocation of its income to this State is discriminatory-
This contention has been dealt with at some length earlier in this opinion and need not be addressed further at this juncture. Plaintiff also contends, however, that application of the three-part allocation factor (“payroll,” “property” and “receipts”) contemplated by the statute (N.J.S.A. 54:10E-6) produces a result of zero because plaintiff has no personnel or property in New Jersey and derives no receipts from within the State. The simple answer to this argument is that defendant is not confined to the three-part allocation factor. He may use any method, including permutations and combinations of the three-part factor “calculated to effect a fair and proper allocation of the entire net income reasonably attributable” to New Jersey. N.J. S.A. 54:10E-8. The record in this case does not disclose what allocation method defendant chose to employ, as plaintiff has merely sought review of defendant’s determination that plaintiff is subject to the New Jersey tax. No tax assessment has been called to the court’s attention.
It is ■ dispositive of plaintiff’s argument, therefore, to observe that the statute contemplates a fair and reasonable allocation of plaintiff’s entire net income reasonably attributable to New Jersey, thus placing plaintiff on the same footing with domestic corporations subject to tax under the Corporation *485 Business Tax Act, N.J.S.A. 54:10A 1 et seq.[2] The taxing statute in issue is not discriminatory.
Plaintiff’s final argument is addressed to the alleged constitutional infirmity of the Corporation Business Activities Reporting Act, N.J.S.A. 14A:13 14 et seq. Plaintiff contends that the act’s sanction for noncompliance[3], i.e., the prohibition against maintaining any action in the New Jersey courts, is violative of both the Due Process and Commerce Clauses. The case of Associates Consumer Discount Co. v. Bozzarello, 149 N.J.Super. 358, 373 A. 2d 1016 (App.Div.1977), is dispositive of plaintiff’s arguments. There, the Appellate Division upheld the act against the same constitutional challenges advanced in the instant case, saying:
The statute is not a taxing measure. It is essentially an information gathering measure. Its clear purpose is to enable the Division of Taxation to obtain pertinent data from any foreign corporation which carries on an activity or owns or maintains property in this State, but which has not obtained a certificate of authority to do business in New Jersey, to the end that a proper determination may be made as to whether such corporation is subject to any State tax.
We discern no constitutional infirmity in either the notice requirement of the Act or the sanctions imposed therein for failure to file. These are entirely reasonable means designed to achieve an essential state purpose — the strengthening of the enforcement of its tax laws, [at 362-363, 373 A.2d 1016]
Plaintiff submits a lengthy critique of Bozzarello and urges this court to disregard it because it was decided incorrectly. I am not at liberty to do so. Trial courts are free to disagree with appellate opinions; they are not free to disobey. *486 Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 169 A.2d 814 (1961); Dunham’s & Co. v. Dzurinko, 125 N.J.Super. 296, 310 A. 2d 515 (App.Div.1973).
I conclude from the foregoing that the Corporation Income Tax Act is constitutional in its application to plaintiff’s activities in New Jersey during the years under review. I conclude, further, that the Corporation Business Activities Reporting Act is also constitutional in its application to plaintiff for the years in issue. Finally, I conclude that the interest income accruing on tuition loans made by plaintiff to New Jersey residents constitutes income derived from sources within New Jersey within the purview of the Corporation Income Tax Act.
Judgment will be entered in accordance with this opinion.

The statute of limitations on refund of New Hampshire’s business profits tax is three years measured from the original due date of the return. RSA 77 — A: 13. Plaintiff’s 1974 New Hampshire return was originally due May 1, 1975. RSA 77-A:6.

The income of a domestic corporation is eligible for allocation if the corporation maintains a regular place of business outside New Jersey. N.J. S.A. 54-.10A-6. The same three-factor formula is used. Likewise, defendant has the same authority to employ alternate allocation methods. Cf. N.J.S.A. 54H0A-8 with N.J.S.A. 54:10E-8.

N.J.S.A. 14A:13 20(a) provides:
No foreign corporation carrying on any activity or owning or maintaining any property in this State which has not obtained a certificate of authority to do business in this State and disclaims liability for the corporation business tax and the corporation income tax shall maintain any action or proceeding in any State or Federal court in New Jersey, until such corporation shall have filed a timely notice of business activities report.