**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



MALA SUNDAR
JUDGE

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

January 29, 2020
(Opinion amended to correctly spell Plaintiff's name)

Michael De Pietro
Self-Represented

Martin Allen, Esq.
DiFrancesco Bateman et al.
Attorney for Defendant

Re:     Michael De Pietro v. Township of Freehold
        Block 105, Lot 26
        Docket No. 005188-2019

Dear Mr. De Pietro and Counsel:

This opinion decides that plaintiff is not qualified to have his home, the above-referenced property ("Subject"), exempted from local property taxation. Although plaintiff is a veteran honorably discharged in 1958 and in 2017 was declared 100% permanently disabled due to service-connected injuries, the tax exemption is not available because plaintiff was not in active service in the military during the Lebanon crisis, which commenced July 1, 1958, and ended November 1, 1958 (or at a later date set by declaration of the President or Congress), as required by the enabling statute, N.J.S.A. 54:4-8.10(a). Plaintiff's transfer to the Army reserves after his discharge from active military service did not continue his status as being in active service for purposes of the exemption statute, N.J.S.A. 54:4-3.30.

The facts are undisputed. Plaintiff begin serving in the United States Army on June 28, 1956. During this period, he was stationed in Fort Benning, Georgia. He was honorably discharged on June 27, 1958, because his "term of service" had expired. His Form DD 214









(Report of Transfer or Discharge) showed plaintiff had a total two years of "active service" and zero years of "foreign and/or sea service."

After his discharge, plaintiff was transferred to the United States Army Corps Reserves, which he stated was in New Jersey, where he served for another six months. He asserted that this transfer to the Reserves was mandatory. Form DD 214 showed that the plaintiff was discharged, and the "type of transfer or discharge" was a transfer to the "USAR" (United States Army Reserves). The "District or Area of Command to which Reservist Transferred" was noted as "Trans HQ II US Army Corps (Reserve)." The "terminal date of reserve obligation" was in four years, or June 27, 1962.

Effective August 30, 2017, plaintiff's wartime service-connected disability was deemed to be 100% permanent and total by the federal Department of Veterans Affairs (VA).

Sometime in late 2018, plaintiff applied to the assessor for defendant, Township of Freehold ("Township"), for a local property tax exemption on the Subject. On the form, plaintiff checked that he had served during the Lebanon crisis. After confirming with the New Jersey Division of Taxation, the Township's assessor denied the exemption request on grounds the Lebanon crisis commenced after plaintiff had been honorably discharged.

Plaintiff appealed to the Monmouth County Board of Taxation ("County Board") seeking a tax exemption under N.J.S.A. 54:4-3.30. By judgment dated February 28, 2019, the County Board denied plaintiff the sought-for tax exemption, which plaintiff appealed to this court.

**ANALYSIS**

N.J.S.A. 54:4-3.30 exempts from local property tax a residence owned by a veteran who has been honorably discharged "from active service, in time of war, in any branch of the Armed Forces" and has suffered an enumerated "service-connected disability" or has been determined

by the VA to be 100% permanently disabled due to military service. See also N.J.A.C. 18:28-2.1 (100% "permanently and totally disabled war veterans . . . [who] are honorably discharged . . . from active service in time of war, are granted a full real property tax exemption on their dwelling house and the lot on which it is situated").

The phrase "active service, in time of war" is defined by another statute, N.J.S.A. 54:4-8.10(a).[1] The phrase is defined to include certain periods of specified conflicts and wars. One such period is the Lebanon crisis, which was included by L. 2001, c. 127. The statute provides as follows:

> "Active service in time of war" means active service by a person, while in the United States Armed Forces, at some time during one of the following periods:
> . . .
> The Lebanon crisis, on or after July 1, 1958, who has served in Lebanon or on board any ship actively engaged in patrolling the territorial waters of that nation for a period, continuous or in the aggregate, of at least 14 days commencing on or before November 1, 1958 or the date of termination of that conflict, as proclaimed by the President of the United States or Congress, whichever date of termination is the latest, in such active service; provided, that any person receiving an actual service-incurred injury or disability shall be classed as a veteran whether or not that person has completed the 14 days' service as herein provided;
>
> [N.J.S.A. 54:4-8.10(a)].

Here, it is undisputed that plaintiff was never physically present in Lebanon during his active military service. The plain language of the statute requires that a veteran have "served in Lebanon." Ibid. (emphasis added). However, effective January 16, 2018, the Legislature deleted the geographic and service-period requirements. Thus, N.J.S.A. 54:4-3.33a provides as follows:

---

[1] In 1963, the Legislature enacted N.J.S.A. 54:4-8.10 to -8.23 to provide a $250 deduction from local property taxes for all war veterans who were honorably discharged "from active service in time of war," and in this context provided the definition of that phrase. The definition was later incorporated into the local property tax exemption statute for permanently disabled veterans. See N.J.S.A. 54:4-3.33a.

> For purposes of eligibility for the property tax exemption authorized in . . . [N.J.S.A. 54:4-3.30], "active service in time of war" shall mean active service during a time period specified in the definition of "active service in time of war" in section . . . [N.J.S.A. 54:4-8.10], but shall not require a minimum length of continuous or aggregate service in any foreign country, on board any ship or naval vessel, or in any foreign airspace; and also shall not require that the service-connected disability suffered by a veteran shall have occurred during contiguous or aggregate service in any foreign country, on board any ship or naval vessel, or in any foreign airspace.
>
> [N.J.S.A. 54:4-3.33a(b).]

Clearly, this amendment could permit plaintiff to be entitled to the local property tax exemption although he never served in Lebanon.

However, the above statute defines the phrase "active service in time of war" to "mean active service during a time period specified in" N.J.S.A. 54:4-8.10(a) (emphasis added). See also N.J.A.C. 18:28-1.1 (defining the phrase "Active service and/or active duty in time of war" to "mean[] active service at some time during one of the periods defined in N.J.S.A. 54:4-8.10(a) as provided by N.J.S.A. 54:4-3.33a"). Here, it is undisputed that plaintiff's discharge date was June 27, 1958. Form DD 214 also considered plaintiff's "active service" as being the two-year period of June 27, 1956, to June 27, 1958. This discharge date was before the commencement of the Lebanon crisis specified in N.J.S.A. 54:4-8.10(a), i.e., was before July 1, 1958. Thus, it appears that the Township's assessor reasonably concluded that plaintiff was disqualified from the property tax exemption, albeit by a four-day period. See Bentz v. Township of Little Egg Harbor, 31 N.J. Tax 209, 221 (App. Div. 2019) (N.J.S.A. 54:4-8.10(a) "lists the wars, conflicts, operations, missions, and timeframes during which a disabled veteran must have served in order to qualify for a property tax exemption").

Plaintiff argues that he was in active service "during" the time of the Lebanon crisis because he was immediately, and mandatorily, transferred by the Army to the Reserves. Thus, he was and should be considered as having been in "active service in time of war."

4

Neither N.J.S.A. 54:4-3.30 nor 54:4-8.10(a) squarely address whether transfer of a person from active military service to the Army Reserves continues to be "active service." Under federal law governing armed forces, 10 U.S.C. §§ 101-18506, a member of the armed forces should serve for a total initial period of at least six years. 10 U.S.C. §651(a). "Any part of such service that is not active duty or that is active duty for training shall be performed in a reserve component." Ibid. Further, a member of the armed forces, "who is not a Reserve, and who is qualified, shall, upon his release from active duty, be transferred to a reserve component of his armed force to complete the [required period of] service." 10 U.S.C. § 651(b). See also U.S. Army, AR 635-200, Active Duty Enlisted Administrative Separations (2016) ("Release from active duty" is defined as the "[t]ermination of AD [active duty] status and transfer or reversion to status of a Reserve Component Soldier not on active duty," and any individual who was "enlisted or inducted" and has "a Reserve obligation under" the law will be "transferred to a U.S. Army Reserve Control Group").[2]

In this connection, the phrase "active duty" is defined to mean "full-time duty in the active military service of the United States" and includes "full-time training duty, annual training duty" but excludes "full-time National Guard duty." 10 U.S.C. §101(d)(1). See also Army Reg. 635-200 (defining "[a]ctive duty" as "[f]ull-time duty in the active military service of the United States – includes active duty for training" and "[a]ctive army" as including "regular Army Soldiers on active duty" and soldiers in the Army Reserves "on active duty"); 38 U.S.C. §101(21)(A) (defining "active duty" as "full-time duty in the Armed Forces, other than active duty for training").[3] This is similar to New Jersey law governing Military and Veterans, N.J.S.A. 38A:1-1 to 20-5, which defines "Active Duty" to "mean[]

---

[2] These regulations are propounded by the Department of Defense, and titled "Personnel Separations, Active Duty Enlisted Administrative Separations." They address separation from army service for any reason, including, as in plaintiff's case, expiration of term of service. The phrase "AR 635-200" appears on plaintiff's Form DD 214 as the reason for his honorable discharge, i.e., expiration of term of service.
[3] Title 38 of the United States Code, §§ 101-8528, deals with Veterans' Benefits.

duty in the active military service," N.J.S.A. 38A:1-1(i), and separately defines "Active duty for training" to "mean[] duty in the active military service for training purposes." N.J.S.A. 38A:1-1(j).

Federal law defines "active . . . Reserve duty" to mean "active duty performed by a member of a reserve component of the Army, Navy, Air Force, or Marine Corps . . . for a period of 180 consecutive days or more for the purpose of organizing, administering, recruiting, instructing, or training the reserve components." 10 U.S.C. §101(d)(6)(A). See also 38 U.S.C. § 101(22)(A) (defining "active duty for training" as "full-time duty in the Armed Forces performed by Reserves for training purposes"). Cf. Army Reg. 635-200 (defining "[a]ctive army" to exclude the United States Army Reserve "[s]oldiers serving on . . . active duty for training" or who are on active guard reserve "status"). New Jersey defines "[i]nactive duty training" to "mean[] duty performed by a member of the organized militia other than active duty or active duty for training." N.J.S.A. 38A:1-1(k). The "organized militia consists of the National Guard, the Naval Militia and the State Guard." N.J.S.A. 38A:1-3.

All these definitions, considered together, indicate that training while in active military service is considered as active service or duty. However, training while in the reserve component or in New Jersey's organized militia is different from, and thus not considered, active military service or duty.

Thus, and relying upon N.J.S.A. 54:38A-1.1(i), New Jersey Division of Taxation interpreted "active service" in the local property tax exemption to exclude training duty when in the Reserves or National Guard. See Township of Dover v. Scuorzo, 392 N.J. Super. 466, 477 (App. Div. 2007) (noting that the phrase "active service in time of war" was neither plain nor "unambiguous," and holding that the then-existing regulations promulgated in 1948 and 1951 were reasonable in interpreting that phrase to allow the property tax exemption to members of the National Guard and the Reserves only "'when [they] were] detailed for and while on active duty' in time of war with the Army"). Thus, if the active service consisted only of training in the Reserves, then there is no property tax exemption, which conclusion was

supported by federal and state statutes addressing veterans' retirement benefits, all of which consistently defined "active duty" or service as "excluding service in the National Guard or Reserves for training only." Id. at 477-78.

The current regulations continue to grant the property tax exemption to members of the reserves conditioned upon their being in active service. See N.J.A.C. 18:28-2.6(b) ("Reserve unit personnel . . . when deployed for and in active service in time of war with the" Army).[4] Such unit includes, among others, "Officers' Reserves of the Army," and "Regular Army Reserves." N.J.A.C. 18:28-2.6(b)(18); (22). However, "[a]ctive duty for training or field training as a member of a reserve component of the Armed Forces . . . during the pendency of a conflict does not constitute active duty or active service in time of war for the purpose of qualifying for the veteran's tax exemption." N.J.A.C. 18:28-2.7(b). This is because "[a]ctive duty is defined in N.J.S.A. 38A:1-1(i) as full-time duty in active military services of the United States." N.J.A.C. 18:28-2.7(b). See also Division of Taxation, Handbook for New Jersey Assessors, ¶405.05 (rev'd Oct. 2018) (noting that N.J.S.A. 38A:1-1 defines "active duty . . . as full time duty in the active military service of the United States, other than active duty for training").

It should be noted that in Scuorzo, the veteran underwent military training but had never been "called for active duty." Id. at 469. Thus, the court upheld the denial of the tax exemption "to veterans of the National Guard and Reserves whose only service during war was for training purposes." Id. at 479. Here, in contrast, plaintiff was in active military service for two years. Nonetheless, whether the services in the Reserves were performed at the back-end (i.e., after active service, and as part of the federal law requiring transfer to the reserves after termination of active service) or the front-end (i.e.,

---

[4] This regulation was promulgated in 2017 and became effective July 2, 2018. See 49 N.J.R. 1668(a) (June 19, 2017); 50 N.J.R. 1501(a) (July 2, 2018). The prior regulation, effective 2006, permitted property tax "deduction" to "Reserve unit personnel . . . when detailed for and in active service in time of war with the branches" of the United States armed forces. See 38 N.J.R. 2105(a) (May 15, 2006). The 2006 regulations expired in 2016.

before being called for active duty), the conclusion should be the same because the issue is the same: the meaning and scope of the phrase "active service." As to this issue, this court is bound to apply the law as explicated by the Appellate Division in <u>Scuorzo</u>, which is that the phrase "active service" excludes military duty while in the reserves. <u>See</u> <u>Tuition Plan v. Director, Div. of Taxation</u>, 4 N.J. Tax 470, 485 (Tax 1982) (""Trial courts are free to disagree with appellate opinions; they are not free to disobey").

In sum, plaintiff had completed active military service on June 27, 1958. Therefore, he was not in active service as of July 1, 1958, the start date of the Lebanon crisis. His military duty in the Army Reserves after his honorable discharge does not revert his status to being in "active service at time of war" for purposes of N.J.S.A. 54:4-3.30 and 4-8.10(a). There is no proof that he was deployed or detailed or required to re-enter active military duty; rather, plaintiff left the army six months after serving in the Reserves. As such, then, plaintiff was not in "active service," which is a "term of art," <u>Scuorzo</u>, 392 N.J. Super. at 478, during the period of the Lebanon crisis (July 1, 1958 to November 1, 1958), even if he could have been selected to re-enter active duty during his six-month period in the Army Reserves. <u>See e.g.</u> <u>Wellington v. Township of Hillsborough</u>, 27 N.J. Tax 37, 51-52 (Tax 2012) ("unlike a member of the military reserve in training who has the good fortune not to be deployed to a combat unit," one in active duty is so deployed).

**CONCLUSION**

For the above reasons, the court affirms the County Board judgment denying plaintiff the local property tax exemption and will issue an Order and Final Judgment in this regard.

Very Truly Yours,

Mala Sundar, J.T.C.